CLELAND, D.J., delivered the opinion of the court, in which GIBBONS, J., joined. COLE, J. (pp. 405-06), delivered a separate dissenting opinion.
OPINION
CLELAND, District Judge.
Petitioner-Appellant Lucius Crump asks us to find that the Michigan law governing parole has created a liberty interest cognizable under the Fourteenth Amendment and enforceable in a federal court through a 28 U.S.C. § 2254 petition for a writ of habeas corpus. Although Michigan may categorize a parole-eligible prisoner as having a “high probability” of release, we find that an actual release determination remains uncertain and subject to a broad grant of discretion to the Parole Board to decide otherwise. A prisoner in the high-probability class, therefore, has no enforceable claim of entitlement to release. The district court’s dismissal of Appellant’s petition will be AFFIRMED.
I. BACKGROUND
In 2001, pursuant to his plea of guilty, Petitioner was convicted of third-degree criminal sexual conduct (“CSC”) and sentenced to a term of imprisonment from 3 to 22\ years. Following his arrest on the CSC charge, and while on bond for that charge, he was arrested for possession with intent to deliver cocaine. He was convicted of that offense as well, and sentenced to a term of 7 to 20 years imprisonment consecutive to the CSC sentence.
Petitioner became eligible for parole in 2008. The Michigan Parole Board assessed his parole using the Department of Corrections Parole Guidelines. Using the associated guidelines scoresheet, the Board assigned Petitioner a score of +3, which gives him a status of “high probability of parole.” Nonetheless, on July 15, 2008, after a Parole Board interview, the Board denied Petitioner’s application for parole for a period of 18 months. Notice of the Board’s decision was mailed to Petitioner on July 21, 2008. In the section of the notice entitled “Substantial and Compelling Reasons for Guideline Departure,” the Board wrote:
P is a repeat sex offender. P needs SOT [sex offender therapy] to reduce his risk of recidivism. P took SOT [in a previous incarceration], but that did not help. At PBI [Parole Board Interview], P had no insight, empathy, or remorse. He has not reduced his risk.
(Pet., Dist. Ct. Docket 1, Ex. A at 1.) Additional reasons for the Parole Board’s decision are found elsewhere in the notice, in the section entitled “Reasons for the Parole Board Action.” (Id. at 1-2.) The notice also provided a list of “Recommendations for Corrective Action Which May Facilitate Release.” (Id. at 2.)
Petitioner contends that the Board’s decision was based “almost entirely on a seven-year-old psychological evaluation that was conducted just months after Mr. Crump’s incarceration and that therefore did not, and could not, take into account *396 Mr. Crump’s current ‘risk of recidivism.’ ” (Pet’r’s Opening Br. at 7-8.) Petitioner also argues that the assertion that he needed sex offender therapy to reduce his risk of recidivism is not even consistent with the 2001 psychological evaluation because the evaluation stated only that therapy “may” be “of some benefit.” (Id. at 8.) Petitioner further contends that it was inconsistent for the Board to stress the importance of sex offender therapy without also recommending that therapy in the list of “Recommendations for Corrective Action.” [1] (Id.)
On August 28, 2008, Petitioner filed a pro se “Motion to Show Cause” in the United States District Court for the Western District of Michigan, which the court interpreted as a petition for habeas corpus under 28 U.S.C. § 2254. The petition claimed that the Board’s decision to deny him parole was not supported by the record evidence and thus constituted a deprivation of liberty without due process of law.
The petition was referred to Magistrate Judge Hugh Brenneman, who issued a Report and Recommendation on September 8, 2008, recommending a summary dismissal of the petition for failing to raise a meritorious federal claim.[2] Specifically, the magistrate judge held that in the absence of a state-created entitlement, Petitioner lacked a cognizable liberty interest in parole, and he therefore failed to state a claim.
Petitioner filed objections, which were considered by United States District Judge Robert J. Jonker on December 22, 2008. Over Petitioner’s objections, the district court adopted the recommendation, dismissed the habeas petition, and denied a certificate of appealability. Petitioner timely appealed, and this court granted a certificate of appealability.
II. ANALYSIS
A. Standard of Review
In considering a district court’s denial of a petition for a writ of habeas corpus under 28 U.S.C. § 2254, we review all legal conclusions de novo. Tolliver v. Sheets, 594 F.3d 900, 915 (6th Cir.2010) (citing Armstrong v. Morgan, 372 F.3d 778, 781 (6th Cir.2004)). Generally, the district court cannot grant a petition under § 2254 “with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court *397 of the United States.” 28 U.S.C. § 2254(d)(1). Here, however, Petitioner’s claim has not been adjudicated in state court, and we thus apply de novo review.
B. Discussion
The Fourteenth Amendment to the United States Constitution provides that a state may not “deprive any person of life, liberty, or property, without due process of law.” U.S. Const, amend. XIV, § 1. The right to procedural due process “requires that when a State seeks to terminate [a protected] interest ... it must afford ‘notice and opportunity for hearing appropriate to the nature of the case’ before the termination becomes effective.” Bd. of Regents v. Roth, 408 U.S. 564, 570 n. 7, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (quoting Bell v. Burson, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (alteration in original)). “Not every injury or substantial deprivation inflicted upon a person by the state ‘is sufficient to invoke the procedural protections of the Due Process Clause.’” Mayes v. Trammell, 751 F.2d 175, 177 (6th Cir.1984), superseded, by rule (quoting Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)). In order to have a protected interest, Petitioner “clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.” Roth, 408 U.S. at 577, 92 S.Ct. 2701. This, precisely, is Petitioner’s claim.
“There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.” Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). “A state may ... establish a parole system, but it has no duty to do so.” Id. “That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained.” Id. at 11, 99 S.Ct. 2100 (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701). Such a “general interest ... is no more substantial than the inmate’s hope that he will not be transferred to another prison, a hope which is not protected by due process.” Id. (citing Meachum, 427 U.S. at 225, 96 S.Ct. 2532). Rather, to obtain a constitutionally protected liberty interest in parole, Petitioner must have a “legitimate claim of entitlement to” parole, a claim that can be created only by the operation of state law. Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth., 929 F.2d 233, 235 (6th Cir.1991) (quoting Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100). “The federal constitution protects such claims, but does not create them.” Id.
In Greenholtz, the Supreme Court reviewed Nebraska’s parole statutory scheme and found that “the expectancy of release provided in this statute is entitled to some measure of constitutional protection.” 442 U.S. at 12, 99 S.Ct. 2100. In so holding, the Court “emphasize[d] that this statute has unique structure and language and thus whether any other state statute provides a protectible entitlement must be decided on a case-by-case basis.” Id. The “unique structure” to which the court referred is formulated as “shall release ... unless ... [specific conditions are met].” Specifically, the Nebraska statute stated:
Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it shall order his release unless it is of the opinion that his release should be deferred because:
(a) There is a substantial risk that he will not conform to the conditions of parole;
(b) His release would depreciate the seriousness of his crime or promote disrespect for law;
*398 (c) His release would have a substantially adverse effect on institutional discipline; or
(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date.
Id. at 11, 99 S.Ct. 2100 (quoting Neb.Rev. Stat. § 83-1,114(1) (1976) (emphasis added)). The statute also provided “a list of 14 explicit factors and one catchall factor that the Board [wa]s obligated to consider in reaching a decision.” Id. at 11 n. 5, 99 S.Ct. 2100 (citing Neb.Rev.Stat. §§ 83-l,114(2)(a)-(n) (1976)). In a later decision commenting on Greenholtz, the Court explained that “[i]n deciding that this statute created a constitutionally protected liberty interest, the Court found significant its mandatory language — the use of the word ‘shall’ — and the presumption created — that parole release must be granted unless one of four designated justifications for deferral is found.” Bd. of Pardons v. Allen, 482 U.S. 369, 374, 107.S.Ct. 2415, 96 L.Ed.2d 303 (1987).
Likewise, in Allen, the Supreme Court considered Montana’s parole statute, and found that it, too, created a liberty interest in parole. 482 U.S. 369, 107 S.Ct. 2415. The Montana statute used the same kind of mandatory language, but the formulation was reversed. Instead of saying the parole board shall release ... unless certain (negative) factors were present, the Montana statute provided that the parole board shall release ... if certain (positive) factors were present.[3] Specifically, the statute provided,
Prisoners eligible for parole. (1) Subject to the following restrictions, the board shall release on parole ... any person confined in the Montana state prison or the women’s correction center ... when in its opinion there is reasonable probability that the prisoner can be released without detriment to the prisoner or to the community[.]
(2) A parole shall be ordered only for the best interests of society and not as an award of clemency or a reduction of sentence or pardon. A prisoner shall be placed on parole only when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen.
Id. at 376-77, 107 S.Ct. 2415 (citing Mont. Code Ann. § 46-23-201 (1985)) (emphasis in original). The Court explained:
Significantly, the Montana statute, like the Nebraska statute, uses mandatory language (“shall”) to “creatfe] a presumption that parole release will be granted” when the designated findings are made. Greenholtz, 442 U.S., at 12, 99 S.Ct., at 2106. See Statement of Assistant Attorney General of Montana, Tr, of Oral Arg. 6 (“under our statute once the Board of Pardons determines that the facts underlying a particular parole application are such that the release can occur consistently with the three criteria the statute specifies, then under our law the Board is required to order release”). We reject the argu *399 ment that a statute that mandates release “unless” certain findings are made is different from a statute that mandates release “if,” “when,” or “subject to” such findings being made. Any such statute “creates a presumption that parole release will be granted.” Greenholtz, supra, at 12, 99 S.Ct., at 2106.
Id. at 377-78,107 S.Ct. 2415.
Accordingly, in determining whether Michigan’s parole system creates a liberty interest, we must determine whether Petitioner had “a legitimate claim of entitlement to” parole, rather than “an abstract need or desire for it.” Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100 (quoting Roth, 408 U.S. at 577, 92 S.Ct. 2701). The question cannot be answered simply by quantifying the discretion vested with Michigan’s Parole Board. Even the statutes at issue in Greenholtz and Allen vested “very broad” discretion in the parole boards. Greenholtz, 442 U.S. at 13, 99 S.Ct. 2100; Allen, 482 U.S. at 381, 107 S.Ct. 2415. As explained in Allen, referring to Greenholtz:
In essence, the Court made a distinction between two entirely distinct uses of the term discretion. In one sense of the word, an official has discretion when he or she “is simply not bound by standards set by the authority in question.” R. Dworkin, Taking Rights Seriously 32 (1977). In this sense, officials who have been told to parole whomever they wish have discretion. In Greenholtz, the Court determined that a scheme awarding officials this type of discretion does not create a liberty interest in parole release. But the term discretion may instead signify that “an official must use judgment in applying the standards set him [or her] by authority”; in other words, an official has discretion when the standards set by a statutory or regulatory scheme “cannot be applied mechanically.” Dworkin, supra, at 31, 32; see also id., at 69 (“[W]e say that a man has discretion if his duty is defined by standards that reasonable [people] can interpret in different ways”). The Court determined in Greenholtz that the presence of official discretion in this sense is not incompatible with the existence of a liberty interest in parole release when release is required after the Board determines (in its broad discretion) that the necessary prerequisites exist.
Allen, 482 U.S. at 375-76, 107 S.Ct. 2415 (emphasis in original). Rather, Allen and Greenholtz teach that the salient factor is whether the statute contains mandatory language that creates a presumption of release when the designated findings are made. Id. at 377, 107 S.Ct. 2415 (quoting Greenholtz, 442 U.S. at 12, 99 S.Ct. 2100). The mandatory language may be found in a statute, a regulation, or even “policy statements ... or other official promulgations” by parole or prison officials. See Beard v. Livesay, 798 F.2d 874, 877 (6th Cir.1986) (citing Walker v. Hughes, 558 F.2d 1247, 1255 (6th Cir.1977)).
Respondent argues that the Sixth Circuit has already held, in Sweeton v. Brown, 27 F.3d 1162 (6th Cir.1994) (en banc), that Michigan’s parole system does not create a liberty interest in parole. In Sweeton, we reviewed the district court’s denial of a motion to “vacate, modify or terminate a consent decree entered in 1981 governing parole procedures for state prisoners in Michigan.” Id. at 1162. We said:
The Michigan procedural limitations do not detract from the broad powers of the Michigan authorities to deny parole. So long as the parole discretion is broad, as in Michigan, “the State has not created a constitutionally protected liberty interest” by enacting procedural rules. Olim [v. Wakinekona ], 461 U.S. [238] at 249, 103 S.Ct. [1741] at 1747 [75 L.Ed.2d 813 *400 (1983) ]. The parole authorities of the State of Michigan may have been required to follow their own procedural statutes and regulations on parole as amplified in the consent decree as a matter of state law, but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural rules as a matter of federal due process.
Id. at 1164-65 (emphasis in original).[4] Since Sweeton, as Petitioner acknowledges, courts have routinely held that Michigan has not created a liberty interest in parole. Sweeton’s apparently continued vitality was the basis for the Magistrate Judge’s recommendation, ultimately accepted, that the district court dismiss Petitioner’s § 2254 petition:
In Sweeton v. Brown, 27 F.3d 1162, 1164-165 (6th Cir.1994) (en banc), the Sixth Circuit, noting “the broad powers of the Michigan authorities to deny parole,” held that the Michigan system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of Sweeton and has continued to find that Michigan’s parole scheme creates no liberty interest in being released on parole. See Ward v. Stegall, 93 Fed.Appx. 805, 806 (6th Cir. 2004); Martin v. Ohio Adult Parole Auth., 83 Fed.Appx. 114, 115 (6th Cir. 2003); Bullock v. McGinnis, 5 Fed. Appx. 340, 342 (6th Cir.2001); Turnhoe v. Stegall, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); Hawkins v. Abramajtys, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); Irvin v. Mich. Parole Bd., No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); Clifton v. Gach, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17,1999).
Also, in unpublished decisions, the Sixth Circuit has held that particular parts of Michigan’s statutory parole scheme do not create a liberty interest in parole. See Fifer v. Mich. Dep’t of Corr., No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); Moran v. McGinnis, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); Leaphart v. Gach, No. 95-1639,1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); Vertin v. Gabry, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); Neff v. Johnson, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); Janiskee v. Mich. Dep’t of Corr., No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); Haynes v. Hudson, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In addition, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. Glover v. Mich. Parole Bd., [460 Mich. 511,] 596 N.W.2d 598, 603-04 (Mich.1999).
(Report and Recommendation, Dist. Ct. Docket 2, at 3-4.)
While this host of decisions favorably citing Sweeton may appear dispositive, Petitioner’s argument to the contrary is substantial. After Sweeton was issued, the Michigan parole system was amended to limit, in some degree, the Parole Board’s *401 discretion. See In re Parole of Johnson, 219 Mich.App. 595, 556 N.W.2d 899, 900 (1996) (“While the Parole Board continues to enjoy broad discretion in carrying out its legislatively prescribed function, the Legislature’s recent enactments have circumscribed this discretion to some extent.”) (citations omitted). In the intervening fifteen years since these statutory and regulatory amendments took effect, no published Sixth Circuit case has addressed whether Sweeton’s ruling survives the amendments: whether, in other words, the particular provision cited by Petitioner creates a legitimate expectation of parole and thus a liberty interest.[5]
Petitioner focuses not on the parole statute generally, but on one particular provision that classifies certain prisoners as having either a “low” or “high probability of parole.” See Mich. Comp. Laws § 791.233e(6) (2011). Once so classified, the statute provides that the Board shall depart from the classification only for “substantial and compelling reasons.” Id. The starting point of statutory analysis, of course, is the text of the statute itself. See McNeill v. United States, — U.S. -, 131 S.Ct. 2218, 2221, 180 L.Ed.2d 35 (2011) (“As in all statutory construction cases, we begin with ‘the language itself [and] the specific context in which that language is used.’ ” (quoting Robinson v. Shell Oil Co., 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997) (alteration in original))). The statute reposes in the Parole Board trust and broad — although in some ways circumscribed — discretion in its determinations. See Mich. Comp. Laws § 791.235 (2011) (“The release of a prisoner on parole shall be granted solely upon the initiative of the [P]arole [B]oard.”). For example, the statute provides that “[t]he department shall develop parole guidelines that are consistent with section 33(l)(a) and that shall govern the exercise of the [Pjarole [B]oard’s discretion pursuant to sections 34 and 35 as to the release of prisoners on parole under this act.” Mich. Comp. Laws § 791.233e(l) (2011). Parole guidelines attach different probability scores to potential parolees. See Mich. Admin. Code r. 791.7715-7716 (2011) (prescribing the factors to take into consideration in generating a “score” which in turn assigns each parolee a “probability of parole”). “The purpose of the parole guidelines shall be to assist the [P]arole [B]oard in making release decisions that enhance the public safety.” Mich. Comp. Laws § 791.233e(l). The statute further provides:
The department shall promulgate rules pursuant to the administrative procedures ... which shall prescribe the parole guidelines.... Until the rules take effect, the director shall require that the parole guidelines be considered by the [P]arole [B]oard in making release decisions. After the rules take effect, the director shall require that the [P]arole [B]oard follow the parole guidelines.
Mich. Comp. Laws § 791.233e(5) (2011). The specific section applicable to Petitioner states:
*402 (6) The [P]arole [B]oard may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The [P]arole [B]oard shall not use a prisoner’s gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.
Mich. Comp. Laws § 791.233e(6) (2011) (emphasis added); see also Mich. Admin. Code r. 791.7715(5). Petitioner relies on this to argue that the language of the Michigan parole statute is akin to that in Allen and Greenholtz, in that parole must be granted to a classification of prisoners unless “substantial and compelling reasons” exist.
Petitioner also cites Mayes v. Trammell, in which we found that Tennessee’s former parole scheme created a liberty interest. 751 F.2d 175 (6th Cir.1984). There the parole rules provided that the “Board may deny the resident’s release on parole if, by majority vote, it determines” one of four enumerated factors existed. Id. at 178 (citing Tenn. Bd. of Parole Rule 1100-1-1-06(3)). Unlike Michigan’s parole system, however, the Tennessee system provided that “[t]he Board operates under the presumption that each resident who is eligible for parole is a worthy candidate and thus the Board presumes that he will be released on parole when he is first eligible.” Id. (citing Tenn. Bd. of Parole Rule 1100-1 — 1—.06(1)). Thus, although the Tennessee rule used “may” instead of “shall,” it nonetheless incorporated an explicit presumption which gave rise to a enforceable expectation of release, and we specifically relied on that presumption when finding a liberty interest. Id. at 178. Michigan’s statute embraces no such presumption.
A most striking difference between the Michigan parole system and those discussed in Allen, Greenholtz, and Mayes is that the Michigan parole statute provides an expectation of release to only a certain classification of prisoners. That classification, in turn, is determined by a computation of the Parole Board using a variety of factors. See Mich. Admin. Code r. 791.7716(3) (2011) (“A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated for the offense for which parole is being considered and each of the following factors [listing numerous factors].”). Therefore, only certain prisoners, classified after the Parole Board has performed its calculation of the guideline score, could potentially have a liberty interest in parole. The classification is not discernable from a casual reading of the parole statute.[6] Petitioner provides no *403 case in which a liberty interest inheres in a subset of prisoners who are not readily identifiable, as opposed to prisoners generally as in Mayes.
A second difference between the Michigan statute and the statutes in Allen and Greenholtz is the degree of specificity provided in the statute for the predicate exceptions. Accepting Petitioner’s argument that the Board can depart from the “high probability of parole” only for substantial and compelling reasons, such a broad, and undefined,[7] expression of the factual predicate necessarily vests greater discretion in the Board than those in Allen and Greenholtz. In Allen, the Court discussed the type of discretion exercised in both the Montana and Nebraska statutes, and concluded that, under the relevant “shall ... when/unless” language structures, both statutes required determining whether similar factual predicates were met:
Moreover, the “substantive predicates,” see Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983), of parole release in Montana are similar to those in Nebraska. In both States, the Parole Board must assess the impact of release on both the prisoner and the community. A central concern of each is the prisoner’s ability “to lead a law-abiding life.” Neb.Rev.Stat. § 83 — l,114(l)(d) (1981); see § 83-l,114(l)(a) (prisoner may not be released if there is “a substantial risk that he will not conform to the conditions of parole”); MontCode Ann. § 46-23-201(2) (1985) (prisoner must be released when, inter alia, it will cause no detriment to him or her and must not be released unless the prisoner is “able and willing to fulfill the obligations of a law-abiding citizen”). An interrelated concern of both statutes is whether the release can be achieved without “detriment to ... the community.” MontCode Ann. § 46-23-201(1) (1985); see § 46-23-201(2) (prisoner must be released only “for the best interests of society”); see Neb.Rev. Stat. § 83-l,114(l)(b) (1981) (prisoner must not be released if it “would depreciate the seriousness of his crime or promote disrespect for law”). The discretion left with the parole boards is equivalent in Montana and Nebraska.
Allen, 482 U.S. at 379-80, 107 S.Ct. 2415. In Michigan, the discretion left to the Parole Board is markedly greater, as the predicate consideration (“substantial and compelling reasons stated in writing”) is far less particularized than the significant considerations in Allen and Greenholtz, comprising a list of specifically enumerated factors. Michigan’s law provides that so *404 long as the reasons meet the standards (and avoid the statutory proscriptions) they need not be anything in particular to suffice.
Finally, and obviously, the classification into which each prisoner is placed is a “probability.” While Petitioner may have been classified as a “high probability of parole,” a probability does not equal a presumption. As defined by the Oxford English Dictionary, probability means “[t]he property or fact of being probable, esp. of being uncertain but more likely than not.” Oxford English Dictionary (3d ed.2007). Everyday parlance is quite consistent with this definition: “probability” lies at some distance from certainty. Neither can a probability, incorporating as it does that degree of uncertainty, rise to the significance of a mandated result, or a presumption. Even if a grant of parole were viewed as “more likely than not” to occur, the outcome nonetheless remains “uncertain,” and therefore “more likely than not” cannot create a presumption’s “entitlement” to that result; there can be no legitimate expectation or entitlement properly founded on the basis of an event the occurrence of which is merely “likely.” See Bd. of Regents, 408 U.S. at 577, 92 S.Ct. 2701. A gambler who managed to get even odds betting on the USSR hockey team against the U.S. in the 1980 Winter Olympics was far “more likely than not” going to win. He was probably planning how he would spend his loot even before the first puck dropped. But uncertainty intervened, the U.S. happily prevailed, and the gambler never saw a dime.
We find that Michigan’s 1996 amendments did not affect the holding in Sweeton. There is no “legitimate claim of entitlement to” parole, Greenholtz, 442 U.S. at 7, 99 S.Ct. 2100 (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701), and thus no liberty interest in parole.
This finding is also consistent with two unpublished Sixth Circuit decisions which have addressed the issue, although briefly. In Caldwell v. McNutt, 158 Fed. Appx. 739 (6th Cir.2006), the panel found that the amendments to the parole procedures did not impact Sweeton’s holding:
Michigan law, which imbues the Parole Board with broad discretion, does not create a liberty interest in the granting of parole. Sweeton v. Brown, 27 F.3d 1162, 1164-65 (6th Cir.1994) (en banc). (Though Michigan’s statutes governing parole procedures have been amended in minor ways since Sweeton, the legislature has made no alterations that would change the result in that case. See Mich. Comp. Laws §§ 791.234-.235.) Therefore, even if the Parole Board relied on inaccurate information to deny Caldwell parole, it did not violate any liberty interest protected by the United States Constitution.
Id. at 740-41. A second panel examined the language to which Petitioner cites and held:
The district court properly concluded that the Michigan parole scheme does not create a protected liberty interest. In support of their claim, the plaintiffs argued that the current Michigan parole scheme creates a protected liberty interest in parole because it places severe restrictions on the Board’s discretion to grant or deny parole, and because it requires the Board to provide “substantial and compelling reasons” for departing from the parole guidelines. Prisoners have “no constitutional or inherent right” to parole or a parole hearing. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Michigan law provides that “[t]he release of a prisoner on parole shall be granted solely upon the initiative of the parole *405 board.” Mich. Comp. Laws Ann. § 791.235(l)(a) (West Group 2002). Contrary to the plaintiffs’ argument, the ultimate authority to grant parole- still lies within the discretion of the Board. Hence, the Michigan parole scheme does not create a protected liberty interest in release on parole.
Carnes v. Engler, 76 Fed.Appx. 79, 80 (6th Cir.2003). Unpublished decisions in the Sixth Circuit are, of course, not binding precedent on subsequent panels, see Sheets v. Moore, 97 F.3d 164, 167 (6th Cir.1996) (Stating that unpublished opinions “carry no precedential weight ... [and] have no binding effect on anyone other than the parties to the action.”), but their reasoning may be “instructive” or helpful. See Combs v. Int'l Ins. Co., 354 F.3d 568, 593 (6th Cir.2004) (“Although Willits v. Peabody Coal Co., 188 F.3d 510, 1999 WL. 701916 (6th Cir. Sept. 1, 1999) ] is an unpublished opinion, its reasoning is instructive.”); Boyd v. Yukins, 99 Fed.Appx. 699, 703 (6th Cir.2004) (“Our unpublished case of Mix v. Robinson, 64 Fed.Appx. 952, 957-58 (6th Cir.2003), is instructive.”). The holdings of Caldwell and Carnes lend further support to our finding that Michigan still has not created a liberty interest in parole.
Austrian philosopher Ivan Illich observed, “we must rediscover the distinction between hope and expectation.” Ivan Illich, Deschooling Society 105 (1971). The maintenance of just this distinction is near-bedrock of Fourteenth Amendment due process jurisprudence. Liberty interests do not arise casually from vague or anticipated hopes. They arise instead from legitimate claims of entitlement. Roth, 408 U.S. at 577, 92 S.Ct. 2701. A fair reading of Michigan’s parole system reveals that it extends the possibility — even to the extent of being probable — that parole status will be awarded. “That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained.” Greenholtz, 442 U.S. at 11, 99 S.Ct. 2100 (citing Roth, 408 U.S. at 577, 92 S.Ct. 2701). Though he has identified a basis for his hope of parole, Petitioner has failed to identify a protectable liberty interest to which he is entitled under the Fourteenth Amendment.
III. CONCLUSION
For the foregoing reasons, we AFFIRM the dismissal of the petition for habeas corpus.

. Although the validity of the Board's reasoning is not an issue directly before us, most, if not all, of Petitioner's stated concerns are not factually accurate. For example, Petitioner argues that the Board’s decision was "almost entirely” based on the 2001 evaluation, but the notice lists a variety of bases for its opinion, most notably that at the Parole Board Interview, Petitioner demonstrated a lack of insight, empathy, or remorse. Moreover, there is nothing inconsistent about stating that Petitioner "needs” sex offender therapy when the evaluation stated that it "may” be helpful. Finally, contrary to Petitioner's assertion, the notice did list in its "Recommendations” that Petitioner should "obtain screening by psychological staff to determine the appropriateness of group therapy to reduce the risk to society.”

. The rules governing § 2254 cases provide that the court shall promptly examine a petition to determine "if it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief.” Rules Governing § 2254, Rule 4. If the court determines that the petitioner is not entitled to relief, the court shall summarily dismiss the petition. McFarland v. Scott, 512 U.S. 849, 856, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face....”).

. This court commented on the language structure of the Nebraska statute in Mayes, issued between Greenholtz and Allen:
One of the "unique” aspects of the Nebraska statute may be found in its direction that the parole board "shall” order release "unless” certain deferral criteria were present. That the "shall/unless” formulation is importanl is supported by numerous cases. Furthermore, the few statutes that have been held to establish a liberty entitlement are quite similar to the Nebraska scheme reviewed in Greenholtz.
Mayes, 751 F.2d at 177 (internal citations omitted).

. In Sweeton, we commented:
A due respect for the doctrine of federalism, the structural principle by which we subdivide governmental power, discourages constitutionalizing state regulatory procedures. Otherwise federal courts would take over from state administrators and courts the interpretation and enforcement of a whole host of local procedural rules governing such local matters as zoning, probate, licensing, school discipline or public health, and states would be discouraged from laying down reasonable and useful rules to govern the conduct of their own affairs for fear that those rules would subject them to jurisdiction and penalties in federal courts.
Sweeton, 27 F.3d at 1165.

. As will be discussed below, an unpublished case does address the issue, albeit briefly. Further, a recent published case, citing Sweeton, states that a district court “properly dismissed on the ground that plaintiffs lack a constitutionally protected liberty interest in parole.” Foster v. Booker, 595 F.3d 353, 368 (6th Cir.2010). In Foster, however, the issue was not directly before the court because it had not been raised on appeal. See id. ("The complaint does not state a claim under any of these theories. First, considered as a claim under general procedural due process principles with regard to the denial of parole, the district court properly dismissed on the ground that plaintiffs lack a constitutionally protected liberty interest in parole. Plaintiffs do not contest this, but rather argue that this is not the nature of their claim." (citations omitted)).

. The rules for calculating the score list seven broad considerations with numerous subsections included under most of the broad considerations. See Mich. Admin. Code r. 791.7716(3). Most of the considerations seem objective (e.g., under the broad category of "nature of offenses,” the Board is directed to consider such factors as the use of a weapon or threat of a weapon in the underlying offense, any physical or psychological injury to a victim, and property damage of more than $5,000.00). See Mich. Admin. Code r. 791.7716(3)(a)(i-iii) (2011). But other factors appear more subjective (e.g., provision requiring consideration of "the prisoner’s performance in institution programs and community programs during the period between the date of initial confinement on the sentence for which parole is available and parole eligibility, including, but not limited to, participation in work, school, and therapeutic programs,” and provision requiring consideration of the prisoner’s mental health, including "[w]hether subsequent behavior or therapy suggests *403 that improvement has occurred”). See Mich. Admin. Code r. 791.7716(3)(f), (g)(iv) (2011).

. Citing People v. Babcock, 469 Mich. 247, 666 N.W.2d 231, 237 (2003), Petitioner asserts that, under Michigan law, the phrase "substantial and compelling reason” has "acquired a peculiar and appropriate meaning.” In Babcock, the Michigan Supreme Court, reviewing sentencing guidelines, stated:
The phrase "substantial and compelling reason” has, in our judgment, acquired a peculiar and appropriate meaning in the law and, thus, it must be construed according to such meaning. That is, a "substantial and compelling reason” must be construed to mean an "objective and verifiable” reason that " 'keenly' or ‘irresistibly’ grabs our attention”; is "of ‘considerable worth’ in deciding the length of a sentence”; and "exists only in exceptional cases.”
Id. (citing People v. Fields, 448 Mich. 58, 528 N.W.2d 176 (1995)). Even if it is true that "substantial and compelling reasons” in the parole scheme means the same as in the sentencing scheme, the phrase, nonetheless, does not provide further specificity with respect to the types of reasons on which the Parole Board may rely. In Allen and Greenholtz, the statutes provided specific, enumerated factors, while in Michigan what constitutes a “substantial and compelling reason” is left to the broad discretion of the Parole Board.