**NOT RECOMMENDED FOR PUBLICATION**
**File Name: 20a0647n.06**

**No. 19-4059**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 12, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| EDWARD LIGHTNING | ) | |
| | ) | OPINION |
| Defendant-Appellant. | ) | |

**BEFORE: COOK, BUSH, and NALBANDIAN, Circuit Judges.**

**JOHN K. BUSH, Circuit Judge.** Edward Lightning pleaded guilty to one count of being a felon in possession of a firearm. Both Lightning and the government requested sentences within his Sentencing Guidelines range of 30–37 months. But the district court imposed the statutory maximum sentence of 120 months' imprisonment, more than tripling the high end of the Guidelines range. Lightning challenges the procedural and substantive reasonableness of that upward variance. Because we find the sentence substantively unreasonable, we **VACATE** Lightning's sentence and **REMAND** for resentencing.

**I. BACKGROUND**

On June 27, 2019, Edward Lightning entered a guilty plea to one count of being a felon in possession of a firearm. Applying the U.S. Sentencing Guidelines manual, the district court calculated Lightning's offense level as 12 and his criminal history category as VI, the highest category. Those determinations placed the Guidelines-recommended sentencing range between

30 and 37 months' imprisonment. Both the prosecution and the presentence report recommended a sentence within the Guidelines range. Despite their recommendations, the district court issued a notice of a possible upward variance about two weeks before the sentencing hearing.

At the sentencing hearing, the district court reiterated that it was considering an upward variance because of Lightning's lengthy criminal record. Before making its final sentencing determination, the district court offered Lightning the opportunity to explain his decision to illegally possess a firearm. Lightning explained:

> Sir, I've been shot. Like I understand some stuff. I done been shot. Man, I done testified on people in court. I got people—literally, I wasn't out there carrying no gun to hurt nobody. I wasn't robbing nobody. I was just trying to protect myself . . . . I was just basically protecting myself, and I know I'm not allowed to be around no guns, but it would be horror like being in my area, when people riding around with assault rifles, people just shooting at you with assault rifles. It just be horrors, Your Honor. I ain't got no excuse for it. I shouldn't have did it.

After Lightning's testimony, the district court extensively detailed his criminal history. His adult criminal history began with a burglary with a firearm specification in 2002, where Lightning was apprehended without violence as he attempted to escape through a window. Since then, his felony offenses have been nonviolent crimes connected to that original sin—escape, felon in possession of a firearm, and having a weapon while under disability. Based on that criminal history, the district court imposed an upward variance to the statutory maximum sentence, 120 months. Finally, the district court dismissed Lightning's contention that the nonviolent nature of his past convictions supported a sentence within the Guidelines range; the court stated that although Lightning's conduct was "not technically" violent, it was "violent in my view."[1] Almost a month after the sentencing hearing, the district court released a sentencing memorandum

---

[1] That stance is unpersuasive. The only violent conduct in his criminal history report is an arrest at 23, over a decade ago, for felonious assault. But it is difficult to credit that arrest because it got "no billed," meaning a prosecutor presented the evidence to a grand jury, and the grand jury declined to indict Lightning.

2

reiterating its basis for the variance. Perhaps acknowledging the extreme nature of the variance, the district court said during the sentencing hearing that "if any appellate court wants to reverse me, they may do it. I will say it on the record." We accept that invitation.

## II. DISCUSSION

We review Lightning's sentence for both procedural and substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). We find an abuse of discretion when we are "left with a definite and firm conviction that the district court committed a clear error of judgment." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (quoting *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 505 (6th Cir. 2013)).

### A.        Procedural Reasonableness

Review for procedural reasonableness addresses issues such as whether the district court "fail[ed] to calculate (or improperly calculate[d]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors, select[ed] a sentence based on clearly erroneous facts, or fail[ed] to adequately explain the chosen sentence." *United States v. Moon*, 513 F.3d 527, 539 (6th Cir. 2008) (quoting *Gall*, 552 U.S. at 51). A variance can be procedurally unreasonable if the district court's basis for the variance "came as a surprise" and a party's "presentation to the court was prejudiced by the surprise." *United States v. Coppenger*, 775 F.3d 799, 804 (6th Cir. 2015) (quoting *United States v. Rossi*, 422 F. App'x 425, 432 (6th Cir. 2011)).

Lightning's sole basis for his procedural unreasonableness challenge is his contention that the district court did not give sufficient notice of the basis for imposing an upward variance. He argues that the district court should have published its sentencing memorandum prior to sentencing, to allow him to respond. But the district court gave notice of the grounds for a possible upward variance two weeks before trial in its notice of possible upward variance. Although it was

brief, that notice ensured that the grounds for the district court's upward variance did not come as a surprise to Lightning. What's more, Lightning does not identify any "relevant issues that he did not anticipate or have the opportunity to address." *Rossi*, 422 F. App'x at 433. Thus, his procedural unreasonableness argument fails.

B.     **Substantive Reasonableness**

A defendant's sentence is substantively unreasonable if it is longer than necessary to achieve the goals laid out in 18 U.S.C. § 3553(a). *Perez-Rodriguez*, 960 F.3d at 753–54. We begin substantive reasonableness review with the Guidelines range because "in the ordinary case," that range will "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). So when a district court imposes a sentence outside the Guidelines range, it must "consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. In so doing, it must clearly distinguish the case before it from a "mine-run case." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019) (quoting *Kimbrough*, 552 U.S. at 109).

Our review goes beyond merely verifying that the district court offered an explanation. If the court inappropriately weighed the § 3553(a) factors, "the sentence is substantively unreasonable regardless of whether the court checked every procedural box before imposing sentence." *Boucher*, 937 F.3d at 707. And the further a judge varies from the Guidelines range, "the more compelling the justification" must be. *United States v. Aleo*, 681 F.3d 290, 299 (6th Cir. 2012) (quoting *United States v. Poynter*, 495 F.3d 349, 352 (6th Cir. 2007)). We have noted many times that because the Guidelines account for a defendant's criminal history, that same criminal history is unlikely to be compelling enough to justify an extreme variance. *See Boucher*,

937 F.3d at 711 ("And although a defendant's criminal record is relevant to determining the applicable criminal history category, it is usually not a proper reason for a variance precisely because the Guidelines already take it into account." (citations and quotations omitted)); *United States v. Bistline*, 665 F.3d 758, 767 (6th Cir. 2012); *United States v. Borho*, 485 F.3d 904, 912–13 (6th Cir. 2007).

*Boucher* offers a good example of how we conduct substantive reasonableness review of a major variance. There, the defendant's Guidelines range for assaulting a member of Congress was 21 to 27 months imprisonment. *Boucher*, 937 F.3d at 705. But the district court imposed a significant downward variance to a 30-day sentence. Our analysis noted that "if the district court reasonably explains why the defendant's unique circumstances fall outside the 'heartland' of cases affected by the relevant guideline, then the 'court's decision to vary . . . may attract greatest respect.'" *Boucher*, 937 F.3d at 708 (quoting *Kimbrough*, 552 U.S. at 109). And the district court had offered a thorough explanation for its decision, drawing on victim impact statements and extensive testimony in support of the defendant. *Id.* at 706–07. But we still thoroughly vetted the district court's explanation and ultimately reversed, holding that the district court had failed to offer a "sufficiently compelling" explanation for its significant variance. *Id.* at 709 (quoting *Gall*, 552 U.S. at 50). *Boucher* shows that when a district court imposes a significant variance, our substantive reasonableness analysis must vet the reasons it gave to ensure it did not abuse its discretion, especially in a mine-run case.

A mine-run case is a normal offense for someone with an offender's specific sentencing enhancements and criminal history category. Lightning is in the highest criminal history category, category VI.[2] That means he is a repeat offender, so his Guidelines calculation considers his

---

[2] The dissent would affirm Lightning's sentence in part because the district court looked to criminal history that went beyond the history in his Guidelines calculation. *See* Dissent at 11–12. But that analysis disregards the fact

lengthy criminal history in recommending a higher sentence. *See Perez-Rodriguez*, 960 F.3d at 755–56. Yet in its post-sentence report, the district court justified its dramatic departure from the Guidelines range because "Lightning has set himself apart from other offenders in his criminal category. He has done so by continuing to possess firearms and engage in other unlawful activity, putting himself and the public at risk, despite serving multiple sentences for the same or similar offense."

Looking to the Sentencing Commission's statistics on the people who share Lightning's characteristics emphasizes that this case is exactly among the mine-run of felon-in-possession cases for someone with Lightning's criminal history category. Indeed, federal firearms offenders in general are the most likely to recidivate, with 68.3% being rearrested within eight years of release. *United States v. Sims*, 800 F. App'x 383, 389 (6th Cir. 2020) (Stranch, J., dissenting). For felons found in possession of a firearm with Lightning's criminal history category, that rate rises to 88.2%.[3] So the district court's statement that Lightning "has set himself apart from other offenders in his criminal category" by continuing to commit crimes is exactly backward: had Lightning stopped committing crimes, he would have set himself apart from others in his criminal category. Because the district court imposed a variance in a mine-run case, its decision to impose an almost 225% upward variance warrants "closer review." *See Boucher*, 937 F.3d at 708 (quoting *Kimbrough*, 552 U.S. at 109).

---

that Lightning is already in the highest criminal history category, so if he had been convicted of the crimes the dissent describes it would not have altered his Guidelines range. Given that fact, it seems especially inappropriate to enhance his sentence based on the crimes simply because he was not prosecuted and convicted. What's more, with one exception the crimes that the dissent lists fit within Lightning's history of nonviolent conduct. A grand jury declined to return an indictment for that one exception, a felonious assault arrest, making it an especially thin reed on which to base an almost 225% upward variance.

[3] U.S. Sentencing Comm'n, *Recidivism Among Federal Firearms Offenders* (June 2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf.

This closer review begins with *United States v. Warren*, a strikingly similar case where this court found a maximum sentence for being a felon in possession substantively unreasonable. 771 F. App'x 637 (6th Cir. 2019).[4] There, as here, Warren received a substantial upward variance from the Guidelines range for being a felon in possession. *Id.* at 639. And there, as here, the district court based that substantial variance on its determination that because of Warren's criminal history, he had to be incarcerated for as long as the law allowed. *Id.* at 639–40.

In fact, Warren's case presented a stronger basis for an upward variance. Warren's Guidelines range was higher than Lightning's (51 to 63 months), and he actually had a record of violence. *Id.* at 639. In imposing Warren's upward variance, the district court took account of the fact that Warren had—while incarcerated—just beaten his brother so violently that his brother was paralyzed and on the verge of death. *Id.* And it noted the exceptional severity of Warren's crimes, which is a distinct factor when the offense categories fail to adequately reflect a particular crime's severity. *Id.* at 644 (Batchelder, J., dissenting). For example, Warren was convicted of two counts of attempted felonious assault with a firearm. *Id.* But he did not merely attempt it—instead, he shot a victim point-blank in the leg with a shotgun. *Id.* He was also charged with discharge of a firearm on or near prohibited premises, but again he did not just fire the weapon; instead, he shot it "at a vehicle carrying *his own family members*: two sisters and a niece." *Id.* Yet we still determined that "the district court insufficiently distinguished Warren from other offenders in the same criminal history category" because it focused so heavily on Warren's criminal history. *Id.* at 642. In short, despite Warren's violent record, "roughly *doubling* the recommended sentence"

---

[4] Although unpublished decisions are not binding on subsequent panels, their reasoning can be persuasive. *See Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011). That is especially true here, when the facts of the prior decision so closely mirror the present case.

based only on his criminal history was substantively unreasonable. *Id.* at 643. The same is all the more true of tripling Lightning's sentence in the absence of any violent record.

Moving beyond *Warren*, the need to avoid unwarranted sentencing disparities sits at the heart of our substantive reasonableness review. *See Perez-Rodriguez*, 960 F.3d at 756. In mine-run cases like this one, the risk of disparity is especially acute, a risk that only intensifies "when the defendant receives a sentence well outside the Guidelines range." *See Boucher*, 937 F.3d at 714; *see also Perez-Rodriguez,* 960 F.3d at 755 ("When our analysis includes comparing the 'extent of the deviation' among our cases, we may consider the percentage of variance from the specified Guidelines range or the number of months of the sentence.").

The average sentence for someone in Lightning's criminal history category for being a felon in possession of a firearm crime would be seventy-seven months, already significantly higher than Lightning's Guidelines range. And U.S. Sentencing Commission data indicate that in 2019, only 10.3% of felon in possession offenders received an upward variance.[5] Even when they did, their sentences increased by an average of 52.4%. *Id.* Those statistics place the 225% increase that Lightning received in sharp relief. And the facts of this case do not show a defendant who is among the worst of the 10.3% of felon-in-possession defendants who receive an upward variance, such that a 172.6%-above-average variance is reasonable.

Comparison to felon-in-possession cases where we upheld upward variances further underscores the extreme nature of the variance in this case. In *United States v. Clemons*, for example, we upheld a 23-month upward variance (from 57 to 80 months) for a felon with two prior felonious assault convictions, a robbery conviction, and a conviction for improperly discharging a firearm. 757 F. App'x 413, 414, 422 (6th Cir. 2018). In *United States v. Sims*, we upheld—over

---

[5] U.S. Sentencing Comm'n, *Quick Facts: Felon in Possession of a Firearm* (2019), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Felon_In_Possession_FY19.pdf.

a dissent—a 15-month variance (from 33 to 48 months) for a felon with 14 adult convictions ranging from burglary to a prior felon-in-possession case. 800 F. App'x at 385, 387. And in *United States v. Williams*, we upheld a 27-month variance (from 33 months to 60 months) for a felon who had robbed a bank and was holding the gun in question for another violent bank robber. 664 F. App'x 517, 518–20 (6th Cir. 2016). Yet Lightning, a nonviolent offender, received an additional 83 months, a 225% increase.

The sheer mundanity of Lightning's circumstances makes it difficult to read the district court's explanation of its sentence and not be left with "a definite and firm conviction that the district court committed a clear error of judgment." *Perez-Rodriguez*, 960 F.3d at 753 (citation omitted). In light of our holding in *Warren*, the Sentencing Commission's statistics, and our other felon in possession precedents, we hold that the district court abused its discretion by more than tripling Lightning's Guidelines sentence. For those reasons, we **VACATE** the sentence and **REMAND** to the district court to fashion a sentence that is not greater than necessary to achieve the purposes of sentencing.

**NALBANDIAN, Circuit Judge, dissenting.** Edward Lighting pled guilty to being a felon in possession of a firearm and received a ten-year sentence—the statutory maximum. The sentence well exceeds his Guidelines range of 30–37 months. I agree that Lightning's sentence is procedurally reasonable. But because Lightning's sentence is also substantively reasonable, I would affirm. To be fair, this is a close case, and the majority's resolution is defensible. But for the reasons below, I come to a different conclusion.

When we review a sentence for substantive reasonableness, we give due deference to the district court. *Gall v. United States*, 552 U.S. 38, 51 (2007). "[T]his circuit gives sentencing courts broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts." *United States v. Boucher*, 937 F.3d 702, 708 (6th Cir. 2019). That's because the sentencing court "has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Rita v. United States*, 551 U.S. 338, 357–58 (2007). So when a defendant challenges his sentence as "too long," he must overcome a "high bar." *United States v. Thomas*, 933 F.3d 605, 612–13 (6th Cir. 2019).

That bar is even higher when, in varying upward from the Guidelines, the district court "explain[s] what distinguishes that defendant's case from a typical one." *Boucher*, 937 F.3d at 708. In fact, if the district court "reasonably explains why the defendant's unique circumstances fall outside the 'heartland' of cases affected by the relevant guideline, then the 'court's decision to vary . . . may attract greatest respect.'" *Id.* (quoting *Kimbrough v. United States*, 552 U.S. 85, 109 (2007)). So it's not an abuse of discretion for a district court to vary upward—even substantially— if the court considers the relevant sentencing factors and explains its decision. *See United States v. Castro-Audelo*, 516 F. App'x 544, 544–45 (6th Cir. 2013) (affirming as reasonable a 108-month sentence when the Guidelines range was 33 to 41 months).

The thrust of the majority's argument is two-fold: first, Lightning's is a mine-run case, so the district court needed to articulate more compelling reasons to justify the variance; and second, the district court relied too heavily on Lightning's criminal past in varying upward. *Ante*, at 5 ("[B]ecause the Guidelines account for a defendant's criminal history, that same criminal history is unlikely to be compelling enough to justify an extreme variance."). The Guidelines, the majority points out, already accounted for Lightning's criminal history.

I agree that it's important for the district court to avoid double counting crimes in sentencing. But I disagree that the district court relied on Lightning's criminal history *as counted by the Guidelines* in varying upward. There's a lot of conduct that Lightning's Guidelines range didn't consider but that the district court did consider. Consider some offenses Lightning has committed:

- Lightning took police on a high-speed car chase then tried to flee on foot. Officers found fake drugs on him and a stolen firearm.

- Lightning tried to sell a firearm and ammunition to an undercover federal agent. He also claimed to possess three SKS style firearms, one with a 100-round drum style magazine.

- Officers observed Lightning fire two rounds into the air then conceal the gun.

- Police regularly caught Lightning with large amounts of illegal narcotics. The house he burglarized (with a gun) had three bricks of marijuana inside. In his April 2012 conviction for being a felon in possession of a firearm, officers found 7 grams of cocaine in Lightning's sock along with a loaded firearm. When Lightning escaped custody, he had synthetic marijuana on him.

- Police caught Lightning several times in possession of ammunition, loaded firearms, and counterfeit money.

- Lightning hid from federal and state authorities as a fugitive from justice before law enforcement finally arrested him in an attic with a gun, ammunition, and counterfeit money.

- Law enforcement arrested Lightning for committing felonious assault.

- Finally, more than once Lightning disobeyed law enforcement commands while having a loaded gun on him.

11

But the Guidelines didn't capture several of these offenses in setting Lightning's range.[1] The Guidelines didn't consider Lightning's regular possession of, and association with, drugs and counterfeit money. They didn't consider that Lightning was a fugitive from state and federal justice when he was last arrested.[2] They didn't consider his arrest for felonious assault. They didn't consider Lightning's act of firing two rounds of a gun into the air.[3] They didn't consider Lightning's illegal attempt to sell loaded firearms.[4] And they didn't consider the speed with which Lightning recidivated after (or even before) release. So the district court in varying upward didn't just rely on Lightning's "criminal history" as accounted for by the Guidelines. It considered several instances of criminal behavior that the Guidelines didn't count. Besides, we've repeatedly rejected the argument that a sentence is substantively unreasonable just because the district court justified an upward variance by citing conduct used to calculate the Guidelines range. *United States v. Lanning*, 633 F.3d 469, 477–79 (6th Cir. 2011); *see United States v. Heard*, 749 F. App'x 367, 372 (6th Cir. 2018) (collecting cases).

---

[1] Generally, before a district court can consider uncharged or dismissed conduct in sentencing, the court must find that it happened by a preponderance of the evidence. *See, e.g.*, *United States v. Haj-Hamed*, 549 F.3d 1020, 1026 (6th Cir. 2008). But "[a]t sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). Lightning never objected to the factual findings in the PSR, so the district court was entitled to—and did—rely on those facts as established. *Id.*; *see United States v. Wales*, 68 F. App'x 575, 586 (6th Cir. 2003); *United States v. McCully*, 407 F.3d 931, 933 (8th Cir. 2005).

[2] This is a different offense than Lightning's other escape convictions.

[3] "[L]aw enforcement officers observed Lightning fire two shots from a handgun into the air and then conceal the weapon in his waistband." (R. 26, Sentencing Mem., PageID # 127–28.) Lightning's presentence investigation report shows that Lightning served a sentence arising out of this incident. But a closer reading of the PSR shows that the conviction was for Lightning's violation of Ohio's prohibition on carrying a concealed weapon—the act of concealing the gun in his waistband. The conviction *didn't* cover Lightning's act of actually firing the gun. *See* Ohio Rev. Code § 2923.12 ("No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand . . . [a] handgun other than a dangerous ordnance . . . .").

[4] The offense for which Lightning served time was being a felon in possession of a firearm—not the attempted illegal sale of a firearm. *Cf.* 18 U.S.C. § 922(a).

So I don't think the district court relied too heavily on what the Guidelines already captured. Perhaps my disagreement with the majority, then, is over whether this is a mine-run case. I don't think it is.

It's true, as the majority points out, that most felon-in-possession offenders recidivate. But Lightning's recidivism stands out. The Sentencing Commission says that the median time for a felon-in-possession offender to recidivate is 17 months.[5] So let's explore Lightning's criminal timeline. In June 2002, Lightning committed burglary with a firearm specification; the court sentenced him to five years in custody.[6] He was "released from custody" on October 10, 2008, but before that, in February 2008, he tried to escape custody. The court sentenced him to four years custody for that offense, and he was released in March 2012 on post-release control. *One month later*, Lightning was again arrested, this time for being a felon in possession of a firearm. Before sentencing for that crime, and less than four months after it, Lightning was again arrested, this time for trying to sell guns and ammunition to an undercover federal agent. For being a felon in possession of a firearm, he received fifty-five months in custody starting in September 2013. Then, in January 2017, supervised release started, but in August of that same year, Lightning violated supervision, and he was sentenced to 12 months in custody. Finally, in September 2018, Lightning took police on a high-speed car chase. Police eventually caught him, and he had a stolen gun and fake drugs in his possession.

---

[5] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190627_Recidivism_Firearms.pdf.

[6] It's worth noting that the 2002 offense wasn't Lightning's first criminal conviction—it was the basis for his later felon-in-possession convictions. But before the burglary, Lightning was convicted of 1. Receiving stolen property; 2. Carrying a concealed weapon; 3. Falsification; and 4. Aggravated trespass. And all in a *thirteen-month* span.

All that to say, Lightning wasted little to no time before reoffending. In fact, these offenses don't even include five others for which police arrested Lightning. So his case is well outside the heartland in this respect. And since this isn't a mine-run case, I don't think *Boucher* is very useful here. We subjected the major variance in *Boucher* to exacting scrutiny after determining that his case looked like a mine-run case. 937 F.3d at 708, 714. That doesn't apply here.

It's true that we reversed in *Boucher* even though "the district court had offered a thorough explanation for its decision." *Ante*, at 5. And, of course, I agree that offering an explanation (even a lengthy one) will not, by itself, justify a variance. Explanations, of course, must be reasonable. *Kimbrough*, 552 U.S. at 109. But the key in *Boucher* was that the district court relied on factors that the Sentencing Guidelines *explicitly discourage* courts from considering. 937 F.3d at 710–11. It looked to Boucher's "education, medical practice, reputation in the community, involvement in his church, lack of criminal history, military background, and two children who 'are doing very well.'" *Id.* at 710. "While these factors might distinguish Boucher from a mine-run defendant convicted of assault, they are almost all disfavored as grounds for a below-Guidelines sentence." *Id.* at 710–11. Again, I think this case is different given Lightning's conduct.

I also believe there are important distinctions between *United States v. Warren*, 771 F. App'x 637 (6th Cir. 2019), and this case. Throughout *Warren* we faulted the district court for imposing an above-Guidelines sentence based exclusively on Warren's criminal history.[7] *Id.* at 641 ("[T]he *only reason* the court gave for that disparity was Warren's criminal record." (emphasis added)); *United States v. Sims*, 800 F. App'x 383, 386 (6th Cir. 2020) (noting that we reversed in

---

[7] It's true that the district court in *Warren* also noted that Warren had also badly beaten his brother in prison. But the court said this only "confirm[ed]" its view that Warren needed a longer sentence than the Guidelines determined. 771 F. App'x at 639. But if the act of violence "confirmed" this view, that presupposes that enough predicate facts—namely Warren's criminal history as counted by the Guidelines—already justified the higher sentence. In other words, the act of violence wasn't necessary, in the district court's eyes, to justify the upward variance. It only "confirmed" what Warren's criminal history already established.

*Warren* because "the variance was based solely on the defendant's criminal record"). So we reversed that sentence because the district court relied on Warren's criminal history "without a fuller consideration of whether the selected sentence avoids unwarranted sentencing disparities." *Warren*, 771 F. App'x at 642; *see also id.* ("Because the district court's only discussion of whether the selected sentence avoids unwarranted sentencing disparities hinges on criminal history factors addressed by the Guidelines, the district court insufficiently distinguished Warren from other offenders in the same criminal history category.").

But here, the district court *did* consider and explain the disparity between Lightning's and other defendants' sentences. (R. 26, Sentencing Mem., PageID # 129–30.) And the court *didn't* rely solely on Lightning's criminal history, as counted by the Guidelines, in varying upward. In fact, the district court cited the very acts I discussed above. This sets our case apart from *Warren* because the district court's upward variance here didn't "hinge[] on criminal history factors addressed by the Guidelines." *Warren*, 771 F. App'x at 642. It hinged on several acts that the Guidelines didn't consider. Indeed, maybe that's why Warren's presentence investigation report didn't identify any grounds for an upward variance, *id.* at 638, while Lightning's identified his "continued possession of firearms and his conduct in this case (fleeing in a vehicle and on foot)" as grounds for such a variance. (R. 19, Presentence Investigation Report, PageID # 99.) And maybe it's also why Warren's presentence investigation report disclosed almost no conduct that the district court could use to justify a variance that the Guidelines didn't already consider. The same just isn't true here.

All this sets the district court's sentence apart from the sentence we vacated in *Warren*. Rather than relying on the same acts that the Guidelines already considered, "the district court here provided several reasons supporting its decision to vary upward." *Sims*, 800 F. App'x at 386. It

15

noted several serious crimes that weren't used to calculate the Guidelines range and emphasized the need to promote respect for the law, protect the public, and punish and deter Lightning. All the while, the court acknowledged the disparity between Lightning's sentence and the average sentence for other felon-in-possession defendants.

So even though Lightning's variance was large, the district court didn't abuse its significant discretion by imposing it. *See Boucher*, 937 F.3d at 708 ("In all cases, this circuit gives sentencing courts broad discretion to fashion individualized, fact-driven sentences without interference from appellate courts."). The court recognized the Guidelines sentence as the initial benchmark but found that it wasn't adequate to "deter crime and protect the public." *Thomas*, 933 F.3d at 613; *see* (R. 26, Sentencing Mem., PageID # 129–30.) And the court did exactly what the Sentencing Guidelines say district courts can do when a defendant's criminal history category doesn't adequately capture the seriousness of the defendant's criminal past or the likelihood of future crime: it imposed a higher sentence. U.S.S.G. § 4A1.3(a)(1). Then, the district court "reasonably explain[ed] why [Lightning's] unique circumstances fall outside the 'heartland' of cases affected by the relevant guideline." *Boucher*, 937 F.3d at 708. And it "supported its variance with rational reasons rooted in the § 3553(a) factors." *Thomas*, 933 F.3d at 613. Under our "highly deferential" standard of review, this wasn't an abuse of discretion. *Boucher*, 937 F.3d at 707. If anything, doing all this entitled the district court's decision to the "greatest respect." *Kimbrough*, 552 U.S. at 109. This is true "[w]hether or not we would have chosen his sentence." *Thomas*, 933 F.3d at 613. After all, the district court was there all throughout Lightning's case, not us. *Rita*, 551 U.S. at 357–58.

Lightning also points to his "nonviolent" past as evidence that the district court sentenced him too harshly. I disagree with this characterization. Lightning's "nonviolence" is more a result of luck than character. Lightning committed burglary while possessing a gun, and several bricks

16

of marijuana were in the house he burglarized. In Ohio, the offense of burglary with a firearm specification requires a person to use force, stealth, or deception to trespass into another's habitation "when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense." Ohio Rev. Code § 2911.12(A)(2). So it's hard to see how breaking into a house with a gun where large amounts of drugs were found doesn't have any indicia of violence or potential violence. Indeed, police entered the house and fired shots.

And Lightning's criminal record also includes aggravated trespass, receiving stolen property, carrying a concealed weapon, and multiple convictions for being a felon in possession of a firearm. That's not even including other conduct Lightning has been arrested for, including discharging a firearm in the city (after which he failed to immediately comply with law enforcement commands) and felonious assault. At the very least, this conduct is reckless and could seriously injure or kill someone. And to make matters worse, during several of these offenses, police caught Lightning with drugs, ammunition, and counterfeit money. That includes his latest arrest, when Lightning took police on a high-speed car chase, which caused him to lose control of his vehicle and flee on foot.

Car chases, firearms possession, assault, burglary, and discharging a weapon into the air all pose a serious risk of harm to the public. That some of it happened a long time ago is hardly reassuring—Lightning has barely spent any time outside of prison since he became an adult. So it's simply a coincidence that Lightning hasn't injured or killed anyone yet. And the district court knew and acknowledged all this. In its sentencing memorandum, it explained why the Guidelines range was, in its eyes, inadequate to protect the public and deter Lightning. It was within the court's

17

"broad discretion" to make this call, even if it led to a disparity. *Boucher*, 937 F.3d at 708; *see*

U.S.S.G. § 4A1.3(a)(1). We owe due deference to that judgment.

For these reasons, I respectfully dissent.