RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 15a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

STEVEN ONDO; JONATHAN SIMCOX,

    *Plaintiffs-Appellants,*

   *v.*

CITY OF CLEVELAND, et al.,

    *Defendants-Appellees.*

No. 14-3527

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:13-cv-00762—Patricia A. Gaughan, District Judge.

Argued: January 22, 2015

Decided and Filed: August 3, 2015

Before: BATCHELDER, SUTTON, and COOK, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:** Sara Gedeon, Chesterland, Ohio, for Appellants. Joseph F. Scott, CITY OF CLEVELAND, Cleveland, Ohio, for Appellees. **ON BRIEF:** David B. Malik, Samuel S. Riotte, Chesterland, Ohio, for Appellants. Joseph F. Scott, CITY OF CLEVELAND, Cleveland, Ohio, for Appellees.

  BATCHELDER, J., delivered the opinion of the court in which COOK, J., joined, and SUTTON, J., joined in part. SUTTON, J. (pg. 19), delivered a separate opinion concurring in all but Parts III.B and III.C and in the judgment.

—————————

**OPINION**

—————————

ALICE M. BATCHELDER, Circuit Judge.  Plaintiffs Steven Ondo and Jonathan Simcox were arrested in their temporarily shared residence by Cleveland police officers on April 8, 2011, on allegations of felonious assault on a police officer.  The arrest occurred in the early morning when Plaintiffs were still in their boxer shorts, and police refused their demands to retrieve additional clothing, instead issuing them jumpsuits at some point after Plaintiffs arrived at the police station.  Plaintiffs have repeatedly changed their stories since the arrest.  And in this case—the second lawsuit arising from the arrest—Plaintiffs allege that the officers violated their Fourth Amendment rights by repeatedly striking them.  Plaintiffs, who are homosexual, further claim that the officers violated their rights under the Fourteenth Amendment Equal Protection Clause by forcing them to remain in their boxer shorts.  Plaintiffs also claim that several of these actions constitute intentional infliction of emotional distress under Ohio law.  Most of these allegations were pleaded only against the officers as a group, and Plaintiffs did not amend their pleadings as additional facts purportedly came to light.  Instead, when Defendants moved for summary judgment, Plaintiffs filed affidavits based upon "personal knowledge and belief" with their opposition to summary judgment, claiming specifically—for the first time—which officer allegedly committed each act.  The district court granted Defendants' motion to strike these affidavits, explaining that the court did not know which statements were based solely on personal knowledge, as required by the Federal Rules of Civil Procedure, and which statements were based only upon belief.  The district court then held that without those affidavits, the remaining record did not contain sufficient evidence to permit Plaintiffs' claims to survive Defendants' motion for summary judgment.

We hold that whether to strike in whole or in part affidavits based upon "personal knowledge and belief" is within the sound discretion of the district court, and that the district court did not abuse its discretion here.  We also hold that, construing in the light most favorable to Plaintiffs the record that remains without the affidavits, Defendants are entitled to judgment as

a matter of law because Plaintiffs' arguments fail on the merits. We therefore AFFIRM the judgment of the district court.

## I. FACTS AND PROCEDURAL HISTORY

### A.

At approximately 2:00 AM on April 2, 2011, Steven Ondo and Jonathan Simcox were returning home after several hours of drinking alcohol, and got into a heated argument outside their apartment building. A neighbor came out to confront them, at which time Simcox told him to "F*** off." An altercation ensued involving all three men, during which the neighbor identified himself as an off-duty police officer. Later that night police came to Plaintiffs' door and arrested them in their apartment. Plaintiffs spent two nights in jail and were treated for minor injuries. Several days later, arrest warrants were issued for Plaintiffs for felonious assault on a police officer. On April 8, 2011, at 7:00 AM, SWAT Team officers with the Cleveland Police Warrant Team arrived at Plaintiff's apartment in Cleveland. This ten-man team comprises eight patrol officers under the command of two senior officers, Lieutenant Timothy Gaertner and Sergeant Daniel Galmarini. After entering Plaintiffs' apartment building through the unlocked front door, Officer William Johnson encountered Ondo in the stairwell, informed Ondo of the arrest warrant, and handed Ondo to other officers to handcuff. Johnson then encountered Simcox in the stairwell, handcuffed him, and handed him over to other officers on the second floor. Ondo and Simcox were both agitated and repeatedly asked why they were being arrested. The officers then exited the building, keeping Plaintiffs on the lawn for several minutes as they prepared to load them into a paddy-wagon van to travel to the next warrant location.

Jesse Simcox—the brother of Jonathan—had been sleeping in Ondo's apartment that night and went downstairs to investigate the commotion, where he found officers and Plaintiffs. Plaintiffs claim the officers were "pushing [them] around" and punched them repeatedly in the face, and repeatedly uttered anti-homosexual slurs. Plaintiffs allege that although the officers allowed Jesse Simcox to fetch shoes for Plaintiffs, the police denied Jesse Simcox the opportunity to get pants for them, and thus they were forced to go to jail in their underwear, because, as officers allegedly told them, "faggots don't wear pants in jail." Plaintiffs alleged a barrage of slurs, such as one officer's saying, "It's a house full of fags here." Plaintiffs originally

alleged that they were forced "to wear only their underwear for over a day," later changing their story to claim they were not issued jumpsuits until after dinnertime. While in jail, neither Plaintiff requested or received any medical care, or made any medical report to jail staff. Moreover, no injuries are visible in Plaintiffs' booking photos.

The police denied Plaintiffs' allegations. Gaertner and Galmarini were never named as defendants in the litigation, and insist that each Plaintiff, when detained, was immediately placed under a supervisor's observation and control. Gaertner and Galmarini swore during their depositions that at no time did they observe any mistreatment or slurs. Gaertner did not know anything about a request for pants, while Galmarini said he made the decision to keep Plaintiffs in their boxer shorts because Plaintiffs were agitated (though not resistant), and because the officers were executing a warrant for the alleged assault of an officer, so the supervisors decided for officers' safety to remove Plaintiffs from the apartment setting and convey them to jail as quickly as possible. Contrary to Plaintiffs' claims, their booking photos prove conclusively that they were promptly issued jumpsuits once they arrived at the jail.

**B.**

Plaintiffs' initial arrest occurred on April 2, 2011, and the second arrest followed on April 8, 2011. On January 18, 2012, Plaintiffs filed suit against the City of Cleveland and several of its officers in federal district court, asserting claims under 42 U.S.C. § 1983 for violations of their constitutional rights, as well as various state law claims. Plaintiffs later filed an amended complaint that the district court dismissed on August 27, 2012, for failure to allege sufficient facts to support the counts in the amended complaint. Among other things, the court held that Plaintiffs' alleged facts did not satisfy the standard for municipal liability. On April 5, 2013, Ondo and Simcox filed the current § 1983 suit against seventeen defendants: the City of Cleveland, Officer Clifford Kime, Officer Tintlenot, Officer Cavanaugh, Officer Kean, Sergeant Elias Diaz, Officer Park, Officer Livingston, Officer Rojas, Officer Freeman, Officer Crytzer, Officer William Johnson, Officer Sanchez, Officer Toomey, Corrections Officer Dennis Barack, Corrections Officer Rowell, and Corrections Officer Robinson. On October 1, 2013, the court dismissed Kime from the case under Federal Rule of Civil Procedure 41(a). The court later dismissed Barack and Sanchez due to lack of proper service, dismissed Cavanaugh, Tintlenot,

Diaz, and Kean under Federal Rule of Civil Procedure 12(b)(6), and dismissed the City of Cleveland on the basis of claim preclusion from the first lawsuit.

Of the remaining nine defendants, seven are members of the SWAT Team, and two are corrections officers. The complaint includes claims brought under § 1983 for excessive force, violation of privacy, failure to intervene, and denial of equal protection. It also includes two Ohio state-law claims, one for intentional infliction of emotional distress and the other for invasion of privacy. On February 15, 2014, Defendants moved for summary judgment. Plaintiffs filed their opposition to summary judgment, including affidavits from Ondo and Simcox in which they identified with specificity which officers purportedly committed various acts. Defendants filed a motion to strike the affidavits because they were based on "personal knowledge and belief," instead of personal knowledge exclusively.

On April 28, 2014, the district court granted Defendants' motion to strike, and held that without the specific information in the affidavits, Plaintiffs' allegations were insufficiently supported by the remaining evidence in the record—which includes depositions from Plaintiffs, Defendants, other police officers, and Jesse Simcox, plus jail booking photos of Plaintiffs—to create a genuine issue of fact for a jury that the officers used excessive force or otherwise mistreated Plaintiffs. Consequently, the court granted Defendants' motion for summary judgment. This timely appeal followed.

## II. STANDARD OF REVIEW

"We review a district court's discovery-related rulings under the highly deferential abuse-of-discretion standard." *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014). This includes our review of a district court ruling on a motion to strike an affidavit. *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006). A district court abuses its discretion when it "relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).

We review de novo a district court's grant of summary judgment. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013). Summary judgment is appropriate if there is no

genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant must show the district court that no genuine issue of material fact exists, viewing all evidence in the light most favorable to the nonmoving party, and drawing all justifiable inferences in the nonmoving party's favor. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). There is a genuine issue of material fact only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. We affirm a grant of summary judgment "where the record as a whole could not lead a rational trier of fact to find for the non-moving party." *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (citation, internal quotation marks and alterations omitted).

While the burden is initially on the moving party to show the absence of any genuine issues of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), the nonmoving party must then present "significant probative evidence" to "do more than show that there is some metaphysical doubt as to the material facts" to defeat the motion, *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The court may grant summary judgment if the nonmovant's evidence is insufficiently probative to create a genuine issue of fact. *Anderson*, 477 U.S. at 249–50. When the nonmovant does not effectively address the movant's assertion of a fact, the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### III. ANALYSIS

We must decide six issues in this appeal.

### A.

First, we must decide whether the district court abused its discretion by granting Defendants' motion to strike Plaintiffs' affidavits, in which Plaintiffs swore that their assertions were based on "personal knowledge and belief." Affidavits defeat summary judgment only if

they are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The district court held that Plaintiffs' affidavits did not fulfill this requirement.

Plaintiffs make three points. First, Plaintiffs argue that notwithstanding the words contained in the affidavits, the context makes clear that Plaintiffs were making averments based on personal knowledge only, not belief. Second, they say that courts are required in these situations to segregate affidavits into those parts that are based upon personal knowledge, and to admit those parts into evidence, while rejecting the remainder. And third, they contend that a court can reject the affidavit entirely only if it clearly contradicts other evidence in an attempt to create "sham facts."

In 2009, we held that when an affidavit is partially admissible and partially inadmissible, the district court must reject only those parts that are inadmissible. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 593 (6th Cir. 2009). Also in Plaintiffs' favor, the Fifth Circuit ruled that "magic words" are not required to make explicit that an affiant's declaration is based on personal testimony and competence, holding that a court can conclude from the context of the declaration whether those requirements are satisfied. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 530 (5th Cir. 2005); *accord Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 135 n.9 (4th Cir. 2002); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1018 (9th Cir. 1990). However, district courts generally have broad discretion regarding evidentiary rulings. District courts are even empowered to exclude evidence *sua sponte*. *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1034 (6th Cir. 2003).

We balanced these principles in an unpublished—and thus nonbinding[1]—opinion in *Totman v. Louisville Jefferson County Metro Government*, 391 F. App'x 454 (6th Cir. 2010), concerning a person arrested on drug charges, who claimed that police used excessive force during his detention. *Id.* at 455. Totman's specific allegations regarding how the police physically abused him are similar to Plaintiff's allegations here, and are followed by similarly conflicting accounts offered during litigation, except that Totman indisputably suffered physical

---

[1] "Unpublished decisions in the Sixth Circuit are, of course, not binding precedent on subsequent panels, but their reasoning may be instructive or helpful." *Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) (internal quotation marks and citation omitted).

injuries during his detention. *See id.* at 456–59. Totman's statement included that he swore his assertions were "true and correct to the best of his knowledge and belief."[2] *Id.* at 464 (alterations omitted). We rejected the statement's admissibility as evidence, holding that its allegations "go beyond Totman's personal knowledge and extend to matters within Totman's belief," and as such cannot be regarded as evidence giving rise to a genuine issue of material fact under Federal Rule of Civil Procedure 56 to defeat summary judgment. *Id.* An affiant's "statement . . . based upon his 'belief' . . . [does] not demonstrate the personal knowledge required by [Rule 56]." *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007). Our affirming the district court's summary judgment for the defendants in *Totman* was further buttressed by the plaintiff's lack of certainty regarding precisely which officer committed each allegedly wrong act during the incident. *See id.* at 465.

This is an easier case than *Totman*. Here, as we explain below, there are clear factual discrepancies between the original complaint in the first lawsuit, subsequent complaints, the affidavits, and the admitted evidence. Some of Plaintiffs' assertions here are either contradicted by the booking photos, or demonstrably false, such as the claim in their initial lawsuit that they were forced to remain in their underwear throughout their entire detention and then forced to walk home in their underwear, instead of being clothed in jumpsuits. In *Totman*, there were actual medical reports showing the plaintiff's injuries, and the officer likely responsible had a history of excessive force. There are no such reports or evidence here—to the contrary, their booking photos show no signs of injury or abuse—nor have Plaintiffs shown that the officers in question have a checkered history regarding the use of force. So while there was a significant factual basis for the accounts of the *Totman* plaintiff, the same cannot be said of Plaintiffs' affidavits here.

"An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "It must be remembered that when the moving party presents admissible evidence

---

[2]It is of no moment that Totman's statement was styled as a verified complaint, rather than an affidavit. The same rule governs both types of submissions for purposes of defeating a motion for summary judgment. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

justifying a summary judgment if uncontradicted, the opposing party has the duty to show the existence of a genuine issue of material fact." 10B Wright, Miller & Kane, *Federal Practice and Procedure* § 2738, at 345 (3d ed. 1998) (referencing Rule 56(e), the predecessor of Rule 56(c)(4)). As part of this duty, Federal Rule of Civil Procedure 56(c)(4) "limits the matter to be properly included in an affidavit to facts, and the facts introduced must be alleged on personal knowledge. Thus, . . . statements made on belief or 'on information and belief,' cannot be utilized on a summary-judgment motion." *Id.* at 345–46, 350–54 (footnotes omitted).

We hold that when affidavits based on knowledge and belief are submitted to support or oppose a motion for summary judgment, the district court has discretion to determine whether it can differentiate between knowledge and belief for each averment in the affidavit. If the court can distinguish between the two, then, as was the case in *Upshaw*, the court should excuse the affiant's stylistic error, and must admit the parts based solely upon personal knowledge, while striking the parts based upon belief. If the court cannot differentiate between the two, then consistent with the rationale in Wright & Miller, the court must strike the affidavit in its entirety, as in *Totman*. We review for abuse of discretion the district court's decision on whether it could distinguish between knowledge and belief for each of the affidavit's averments, and thus whether to strike in part or to strike *in toto*.

The district court here found that it could not make those determinations regarding the affidavits filed by Ondo and Simcox, and so struck both affidavits in their entirety. We conclude that the district court did not abuse its discretion in doing so.

**B.**

We turn next to claims that arguably were abandoned at oral argument. During argument, Plaintiffs' counsel, in responding to questions from the bench, conceded that without the stricken affidavits, all of Plaintiffs' claims would fail, raising the possibility that Plaintiffs were abandoning the entirety of the remainder of their appeal. We note that most of the affidavits' content concerned specific alleged incidents of excessive physical force, identifying individual officers with individual acts. So as we address in some detail hereinafter, without the affidavits, Plaintiffs' claims of excessive force and intentional infliction of emotional distress cannot survive summary judgment.

However, the equal-protection claim requires a closer look.  We should not necessarily construe a single inartful or ill-advised verbal response from counsel as waiving anything more than was directly at issue in the discussion at that time.  Even in district court, where it is not uncommon for a claim to be dropped during litigation, we are not quick to declare that a claim has been abandoned.  *See, e.g.*, *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 615–18 (6th Cir. 2014).  We are not aware of any case in which we have concluded, after full briefing, that Plaintiffs have completely abandoned every claim in their entire appeal based on a single verbal exchange during argument that did not include a clear and unequivocal surrender of all remaining issues.  We are aware of the potentially chilling effect such a practice would have.

This issue is muddled by the inconsistency of Plaintiffs' argument.  In their complaint, Plaintiffs pleaded that by preventing them from wearing pants, the officers "treated [them] differently" because they are homosexual, and also that the police officers used "increased violence and excessive force" against Plaintiffs and subjected them to "ridicule" and "called them derogatory names, intended to humiliate them," "because of their sexual orientation." These purportedly injurious acts, Plaintiffs allege, were inflicted upon them "because of their sexual preference" in violation of the Equal Protection Clause.  Plaintiffs later cited among their causes of action that their equal-protection rights were violated when they were treated differently in the course of actions that otherwise violated the Fourth, Eighth, and Fourteenth Amendments.  Plaintiffs further elaborated upon these points when opposing Defendants' motion for summary judgment, and the district court construed their argument as asserting that the officers violated their equal-protection rights both by forcing them to remain in their underwear and by subjecting them to anti-homosexual slurs.  On appeal, Plaintiffs' principal brief makes clear their argument:  "Plaintiffs do not contend that their constitutional rights to equal protection were violated because the Defendants used homophobic slurs or because they had a constitutional right to go to jail in particular clothing.  Rather, Plaintiffs' equal protection claims are based on Defendants' intentional decision to treat them differently simply because they are gay." Yet in their reply brief, although at first they reiterate their broad argument by arguing that any state actions motivated by disapproval of homosexuality violate the Equal Protection Clause, they then immediately reverse course, asserting that "Appellants are not claiming that being called [homophobic slurs] numerous times is an Equal Protection violation.  They are also not

claiming that being told 'faggots don't get to wear pants to jail' is an Equal Protection violation." Rather, Plaintiffs' reply brief explains, "The act of . . . withholding pants from [them] *only because they are gay* is the violation." Subsequently, at the relevant point during oral argument, Plaintiffs' counsel, in discussing part of their equal-protection claim, seemed to recur to Plaintiffs' initial appellate argument, separately arguing all three grounds to support their alleged equal-protection argument that they had raised in their principal brief: (1) that officers physically mistreated Plaintiffs because of their sexuality; (2) that officers required them to go for a prolonged period of time without proper clothing; and (3) that officers called them names.

During oral argument, one member of the panel posed this question to counsel for Plaintiffs regarding the equal-protection claim: "Is it your view that if you strike all the affidavits there really is no evidence supporting the claim?" Counsel responded, "I do think that as a result of striking the affidavits the equal protection claim was also done away with." That judge pressed further: "Properly. You have to have the affidavits to support either that claim or the excessive force?" And counsel answered, "Yes." The stricken affidavits consisted mostly of Plaintiffs' asserting which individual defendant had engaged in which instance of mistreatment. Without those affidavits, the record contains no evidence as to the identity of the officers who allegedly used excessive force against Plaintiffs. But Plaintiffs' equal-protection claim is not dependent on identifying any specific officer. The claim is that the police transported them inappropriately attired. It is true that the record on summary judgment contains Jesse Simcox's deposition testimony that the unidentified officer who allowed him to get shoes for Plaintiffs also prevented him from getting pants for them because "faggots don't get to wear pants in jail." The record also contains Officer Johnson's deposition testimony that he talked to Jesse and asked him to help "find" Plaintiffs some shoes. And nowhere except in the affidavits did Plaintiffs even attempt to link those two pieces of testimony so as to identify Officer Johnson as having delivered that single anti-homosexual slur. But the deposition evidence supports Plaintiffs' claim that the officers on the scene transported Plaintiffs—wearing only their boxer shorts—to jail.

In sum, Plaintiffs' equal-protection argument was framed broadly, then narrowly, then broadly again, then possibly abandoned altogether. The inconsistencies in Plaintiffs' position are

manifest.   We will therefore consider their equal-protection claim only as their final brief restated it, that the officers' keeping them in their boxer shorts while transporting them to jail violated the Equal Protection Clause.

**C.**

Regardless of our stance on abandonment, on the remaining record the equal-protection claim fails as a matter of law.

Plaintiffs claim that Defendants' keeping them in their underwear violates Plaintiffs' rights under the Equal Protection Clause, which requires that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4.  The general principle is that similarly situated persons should be treated alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  More specifically as relevant here, the Equal Protection Clause "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights."  *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006).  When objecting to how police officers effectuate an arrest warrant in this context, "the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause."  *Whren v. United States*, 517 U.S. 806, 813 (1996), *quoted in Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997).[3]

**1.**

Plaintiffs argue that state actions involving homosexuals should trigger some form of heightened scrutiny under the Equal Protection Clause.  Heightened scrutiny is generally either "strict" or "intermediate."   State actions that treat individuals differently on the basis of a fundamental right trigger strict scrutiny.  *Clark v. Jeter*, 486 U.S. 456, 461 (1988).  For years, the Court held that a right is fundamental if it is "fundamental to our scheme of ordered liberty," as evidenced by "whether this right is deeply rooted in this Nation's history and tradition." *McDonald v. City of Chi.*, 561 U.S. 742, 767 (2010) (emphasis and internal quotation marks omitted); *see also Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (providing a similar

---

[3]Although Plaintiffs repeatedly asserted that the police allegedly uttered anti-homosexual statements, they correctly concede in their reply brief that the uttering of slurs or epithets by police officers—while completely inappropriate—is not unconstitutional.  *Williams v. Sandel*, 433 F. App'x 353, 362 (6th Cir. 2011).  "Name calling is not a constitutional violation."  *Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985).

formulation that the Supreme Court has occasionally employed in cases asserting unenumerated rights). Strict scrutiny requires the government to show that the challenged state action is narrowly tailored to achieve a compelling public interest. *City of Cleburne*, 473 U.S. at 440.

Strict scrutiny also applies to state actions that differentiate on the basis of a suspect classification, of which the Supreme Court recognizes only three: race, *Gratz v. Bollinger*, 539 U.S. 244, 270 (2003); alienage, *Graham v. Richardson*, 403 U.S. 365, 371–72, 376 (1971); and national origin, *Oyama v. California*, 332 U.S. 633, 644–46 (1948). State actions treating members of a quasi-suspect class differently from other persons trigger intermediate scrutiny, which requires the government to establish that the action is substantially related to achieving an important public interest. *Craig v. Boren*, 429 U.S. 190, 197 (1976). The Court has recognized two such classifications: gender, *United States v. Virginia*, 518 U.S. 515, 533 (1996), and illegitimacy, *Mills v. Habluetzel*, 456 U.S. 91, 98–99 (1982).

Equal-protection claims that neither implicate a fundamental right nor involve a suspect or quasi-suspect class require only rational-basis review. *Romer v. Evans*, 517 U.S. 620, 631 (1996); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 693 (6th Cir. 2014). Under that deferential standard, the burden is on the challenger to show that the government's action is not rationally related to any legitimate public interest. *Heller v. Doe*, 509 U.S. 312, 319 (1993). Many state actions burden some persons in a way that is different from the way they burden others, and the Equal Protection Clause generally requires no more than a reasoned basis for such differing treatment in situations where foundational liberties and suspect criteria are not implicated. Under rational-basis review, the government's actions enjoy a "strong presumption of validity." *Id.* at 319.

First, Plaintiffs cannot demonstrate that the state action of which they complain burdens a fundamental right. When the Supreme Court held that state laws against sodomy violate the Due Process Clause, it did so using the language of rational-basis review, rather than any form of heightened scrutiny. *See Lawrence v. Texas*, 539 U.S. 558, 574–78 (2003). The Court did not hold that the Constitution includes a fundamental right to homosexual conduct. Whether the Court's recent decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), recasts engaging in

homosexual acts as a fundamental right is irrelevant, because the decision by the police relevant here does not impair Plaintiffs' ability to engage in such conduct.

Nor can Plaintiffs establish that homosexuals are a suspect or quasi-suspect class. The Court has never held that homosexuals satisfy the criteria for such classification. *See Bowen v. Gilliard*, 483 U.S. 587, 602 (1987) (discussing criteria for suspect or quasi-suspect classification); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 28 (1973) (same). The Court has further explained that the rationale underlying these factors is that heightened scrutiny may be justified if a group requires "extraordinary protection from the majoritarian political process." *Id.* The Supreme Court has not recognized any new constitutionally protected classes in over four decades, and instead has repeatedly declined to do so. Moreover, the Court has never defined a suspect or quasi-suspect class on anything other than a trait that is definitively ascertainable at the moment of birth, such as race or biological gender.

In *Obergefell*, the Court was explicitly asked by the petitioners and various amici to declare that homosexuals are a specially protected class, and thus that government actions that disfavor homosexuals are subject to heightened scrutiny. *See* Pet'r Br. at 38–49, *Obergefell*, 135 S. Ct. 2584 (No. 14-556); *see also, e.g.*, Brief of Amici Curiae GLMA et al. in Support of Pet'rs *passim*, *Obergefell*, 135 S. Ct. 2584 (No. 14-556). But the Court held only that the Equal Protection Clause was violated because the challenged statutes interfered with the fundamental right to marry, not that homosexuals enjoy special protections under the Equal Protection Clause. *Obergefell*, 135 S. Ct. at 2602–05.

**2.**

We have always applied rational-basis review to state actions involving sexual orientation. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 438 (6th Cir. 2012); *Scarbrough*, 470 F.3d at 260–61; *Stemler*, 126 F.3d at 873–74. Under the law-of-the-circuit doctrine, an issue decided by a panel of this court can be reconsidered only by the full court sitting en banc, or if there has been a supervening decision by the Supreme Court. *Darrah v. City of Oak Park*, 255 F.3d 301, 309 (6th Cir. 2001). Plaintiffs have not offered any argument as to why heightened scrutiny should apply to state actions involving homosexuals, and indeed failed even to explore the relevant cases. And as we have already explained, *Obergefell* did not abrogate

those prior cases.  We therefore have no basis for reviewing Plaintiffs' equal-protection claim on any basis more stringent than rational-basis review.

Applying the rational-basis test here, viewing the admitted evidence in the light most favorable to Plaintiffs and drawing all inferences in their favor, we hold that a police officer's decision to keep Plaintiffs in their boxer shorts does not violate the Constitution.  Plaintiffs have not shown that our precedents recognize as an equal-protection violation the decision to keep suspects in their current state of dress—including boxer shorts—so long as the person is attired such that his appearance is not obscene and the police officer provides an explanation that satisfies the rational-basis test.  Sergeant Galmarini's explanation here of concern for officers' safety—whether subjectively true or not—is presumed valid and rationally related to a legitimate public interest.  Therefore Plaintiffs' grievance regarding being kept in their boxer shorts until the police could issue them jumpsuits, even if motivated in part by sentiments regarding homosexual behavior, still does not violate the Constitution.

**D.**

Plaintiffs' next claim is that the arresting officers used excessive force against them.[4] "The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers."  *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006).  Courts apply an objective reasonableness test when considering whether officers used excessive force, *Graham v. Connor*, 490 U.S. 386, 395 (1989), which requires that we carefully balance the "nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake," *id.* at 396 (internal quotation marks omitted); *accord Ciminillo v. Streicher*, 434 F.3d 461, 466–67 (6th Cir. 2006).  Such a test "is not capable of precise definition or mechanical application."  *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Instead,

---

[4]Plaintiffs muddle their argument by suggesting that officers' using "increased violence" on account of Plaintiffs' homosexuality is both an excessive-force violation and an equal-protection violation, but they cite no supporting authority.  Use of excessive force during a search or seizure is solely a Fourth Amendment violation, *Ciminillo v. Streicher*, 434 F.3d 461, 464–65 (6th Cir. 2006), an Amendment which applies to the States and their political subdivisions through the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643, 650–55 (1961).  Once an arrest ends, and a person in police custody transitions from arrestee to pretrial detainee, the Fourteenth Amendment thenceforth governs any excessive-force claims that arise during the pretrial detention.  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472–74 (2015); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989).  But claims of excessive force in the context relevant here of an initial encounter with police is governed by the Fourth Amendment, and is not somehow enhanced, or additionally sounding in the Fourteenth Amendment, because of police officers' sentiments regarding homosexuality.

"[t]hese factors are assessed from the perspective of a reasonable officer on the scene making a split-second judgment under tense, uncertain, and rapidly evolving circumstances without the advantage of 20/20 hindsight." *Burgess v. Fischer*, 735 F.3d 462, 473 (6th Cir. 2013); *accord Graham*, 490 U.S. at 396. The Supreme Court's most recent decision in this area of law confirms that this approach is correct, listing various non-exclusive factors a court may look to, *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015), and then concluding that this "objective standard adequately protects an officer who acts in good faith. . . stress[ing] that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer," *id.*[5]

When claiming damages for violations of constitutional rights, Plaintiffs "must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008). Plaintiffs' excessive-force claim consisted of nonspecific allegations that unnamed officers punched them repeatedly, especially "in the face" or "in the nose." In the absence of the affidavits, these allegations of physical mistreatment are not sufficiently specific under *Lanman* to withstand Defendants' motion for summary judgment. We note that following their first arrest on April 2, Plaintiffs sought and received medical care for the minor injuries they sustained during the fight with the off-duty officer. But after the April 8 arrest, despite their allegations of repeated physical strikes, Plaintiffs sought no medical treatment and made no report of such abuse. Moreover, no injuries are visible in their booking photos, which is especially significant given that the only specific aspect of Plaintiffs' allegations is that they were struck on their faces. Plaintiffs' complaint and the discovery that was entered into evidence either attribute purported wrongful acts to the group as a whole, or to officers described in such general terms (e.g., wearing glasses) as to foreclose attributing any one act to any one officer. Rather than attempting to amend their complaint, Plaintiffs waited eleven months, and only then submitting affidavits to augment these allegations in their opposition brief to Defendants' motion for summary judgment. Because the district court was within its discretion in striking those

---

[5]Much of *Kingsley*'s holding pertains only to due-process issues that arise in the context of operating a detention facility, but the aspects cited here would apply to excessive-force claims against police officers regardless of whether the purported violation occurred during an arrest or during pretrial detention.

affidavits, the allegations of physical mistreatment are therefore not supported by sufficient evidence to defeat summary judgment.

**E.**

We consider next whether those officers present during the April 8 arrest who did not physically participate in it, but instead observed the arresting officers perform the arrest, should be liable for failing to intervene to stop the arresting officers' use of excessive force. The general rule is that police officers who were not actually involved in the challenged conduct will be found to have violated the Fourth Amendment only if those officers "'observed or had reason to know that excessive force would be or was being used' and 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess*, 735 F.3d at 475 (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 2011)) (emphasis omitted).

As we have already explained, Plaintiffs' excessive-force claim fails because of insufficient probative evidence to defeat summary judgment. Because Plaintiffs present no viable claim of excessive physical force, they can show no harm that other officers could have intervened to prevent. And because the alleged use of anti-homosexual slurs is not a violation of the Constitution regardless of whether it is examined as an excessive-force claim or an equal-protection claim, the failure of other officers to prevent that conduct did not violate Plaintiffs' rights.

**F.**

Finally, we consider whether the district court erred in granting summary judgment to two of the defendants—Park and Rojas—on Plaintiffs' claim of intentional infliction of emotional distress (IIED). The district court exercised supplemental jurisdiction over that state-law claim, so we are required to apply Ohio law here. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The elements of IIED in the State of Ohio are:

> (1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community, (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury, and (4) that the mental anguish

suffered by the plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

*Burkes v. Stidham*, 668 N.E.2d 982, 989 (Ohio Ct. App. 1995) (citations omitted), *quoted in Rosebrough v. Buckeye Valley High Sch.*, 690 F.3d 427, 433 (6th Cir. 2012). We have held that Ohio courts narrowly define "extreme and outrageous conduct," such that this standard is difficult to meet. *Rosebrough*, 690 F.3d at 434.

In their stricken affidavits, Ondo and Simcox identify Park and Rojas as the officers who committed several of the more extreme actions (e.g., punching in the face), and uttered some of the offensive words. In district court, Park and Rojas claimed immunity under Ohio Revised Code § 2744.03(A)(6), while Plaintiffs argue that one of the statutory exceptions to that immunity applies. But because the district court struck the affidavits from the record, the record contains no evidence to support Plaintiffs' IIED claim. The district court correctly granted summary judgment on this count.

## IV. CONCLUSION

For the foregoing reasons, we hold that the district court was within its discretion when it struck the affidavits that were based upon "personal knowledge and belief," and did not err in concluding that Defendants are entitled to summary judgment. We therefore AFFIRM the judgment of the district court.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SUTTON, Circuit Judge, concurring in large part and concurring in the judgment. I join all but Parts III.B and III.C of Judge Batchelder's thorough and persuasive opinion. In Part III.B, the majority holds that Ondo and Simcox preserved one of their equal protection arguments—namely, their claim that "the officers' keeping them in their boxer shorts while transporting them to jail violated the Equal Protection Clause." *Supra* at 12. I respectfully disagree. During oral argument, counsel for Ondo and Simcox conceded that all of their equal protection claims would fail if the plaintiffs' affidavits were stricken. Oral Argument at 10:12–55, *Ondo v. City of Cleveland* (No. 14-3527). Here is the question: "You have to have the affidavits to support either that [equal protection] claim or excessive force?" *Id.* at 10:55–59. Here is the answer: "Yes." *Id.* at 11:00–01. I would hold Ondo and Simcox to their counsel's answer—that, in the absence of the affidavits, they do not have a cognizable excessive force or equal protection claim. *See United States v. Olano*, 507 U.S. 725, 732–33 (1993). The majority resists this conclusion because it is not aware "of any case in which we have concluded, after full briefing, that Plaintiffs have completely abandoned every claim in their entire appeal based on a single verbal exchange during argument that did not include a clear and unequivocal surrender of all remaining issues." *Supra* at 10. That is not what happened here. Counsel conceded only that *if* the affidavits were struck, Ondo and Simcox's remaining claims would fail. As to that kind of concession—which attorneys often make for tactical reasons—we have frequently respected counsels' admissions at oral argument. *See, e.g.*, *United States v. Gibney*, 519 F.3d 301, 304 (6th Cir. 2008); *United States v. Smith*, 304 F. App'x 397, 399 (6th Cir. 2008); *United States v. Hawkins*, 31 F. App'x 304, 304 (6th Cir. 2002). Under these circumstances, I see no reason in Part III.C to reach the merits of the equal protection claims.