NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0611n.06

No. 16-1451

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 17, 2016
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| VICTOR CAMINATA, )<br><br>    Plaintiff-Appellant, )<br><br>v. )<br><br>COUNTY OF WEXFORD, a Municipal corporation; )<br>TRENT TAYLOR, in his individual capacity; )<br>BRIAN ROOD, in his individual capacity; )<br>MICHAEL JENKINSON, in his individual capacity, )<br><br>    Defendants-Appellees. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |

**BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** Plaintiff Victor Caminata appeals the district court's grant of summary judgment to Defendant Michigan State Police Sergeant Michael Jenkinson, a certified fire investigator, in Caminata's 42 U.S.C. § 1983 action arising from his conviction and sentence for arson, which were subsequently vacated. The sole issue on appeal is whether Jenkinson is entitled to qualified immunity for his actions during an investigation that contributed to Caminata's conviction and four years' imprisonment. Because Caminata has not shown that Jenkinson violated his constitutional rights, we **AFFIRM**.

## I. Background

On March 2, 2008, Caminata was at his girlfriend's house when a fire broke out. Caminata claims he went outside, saw fire escaping from the home's masonry-block chimney, climbed the roof, and used a chimney fire suppressant in an attempt to extinguish the fire. The fire caused the roof to collapse and destroyed the home. The masonry-block chimney vented

heat from a wood stove. This chimney was enclosed by the wood-framed walls of the house. In addition to the masonry-block chimney, the home was partially heated by a boiler system that vented through a metal chimney pipe, which was enclosed by a wood chimney chase.

Sergeant Brian Rood of the Wexford County Sheriff's Department conducted the first inspection of the fire scene on the day of the fire. Rood photographed the house, and his pictures revealed that the masonry-block chimney's thimble hole[1] was not covered by any part of the wood frame. On March 4, 2008, defendant Michael Jenkinson, a Michigan State Police Sergeant and certified fire investigator, inspected the scene. He did not speak to Rood before investigating. Contrary to Rood's findings, Jenkinson, after reconstructing the masonry-block chimney's since-collapsed wood frame ("the board reconstruction"), determined that this chimney's thimble hole had been covered by a wood board. He reported that the wood board that he believed had covered the thimble hole was not fire-damaged, and that he thus concluded that a chimney fire was an unlikely cause of the house fire. Jenkinson did not make a specific finding as to the origin of the fire, but reported that human involvement was possible. Jenkinson took 115 photographs during this initial investigation. He also spoke with Fire Chief Phil Mizga who expressed doubts about Caminata's claim that this was a chimney fire.

Jenkinson, along with James Raad, an insurance company investigator, returned to the fire scene two weeks later, after a Michigan State Police Trooper received an anonymous tip that Caminata had set the fire. During this investigation, Caminata's girlfriend's step-father informed Jenkinson that he believed Caminata had intentionally set the fire. Jenkinson stated in his report that although Caminata claimed he lit the wood stove approximately five hours before the fire

---

[1] A thimble hole is a hole in a masonry chimney that allows for connecting a stovepipe to the chimney. A fire could originate at a thimble hole as a result of hot gases escaping from the chimney.

started, it would be "absolutely impossible" for the wood to have been burning for that long based on the wood's appearance. R. 94-2, PID 2341. Finally, Jenkinson reported that there were two isolated pockets of burning that were consistent with a "heavy, direct flame source having been applied," and that these were suggestive of multiple failed attempts at ignition consistent with an arson fire. R. 94-2, PID 2340. Jenkinson took an additional twenty photographs during this second investigation. The following day, Jenkinson learned that faulty wiring had been ruled out as a potential cause of the fire. On March 26, 2008, Jenkinson filed his supplemental incident report, which concluded that the fire was caused by arson. Caminata was arrested and charged with arson of a dwelling house under M.C.L. 750.72. He was tried, convicted, and on July 8, 2009, sentenced to serve nine to forty years in prison. The Michigan Court of Appeals affirmed the conviction, and the Michigan Supreme Court denied leave to appeal. *People v. Caminata*, 793 N.W.2d 204 (Mich. 2011).

In 2013, the University of Michigan Innocence Clinic secured a new trial for Caminata on the ground that Jenkinson and Raad's investigations were inadequate. The Innocence Clinic alleged that Jenkinson's board reconstruction was done improperly, and that he incorrectly analyzed the isolated pockets of burning that he observed during his follow-up inspection. In response, the Wexford County Prosecutor's Office asked Bureau of Alcohol, Tobacco, Firearms, and Explosives Agent Michael Marquardt, a certified fire instructor, to review the investigation. After reviewing the case file and interviewing Jenkinson, Marquardt concluded that there was sufficient data to support classifying the fire as arson.

The night before the evidentiary hearing on Caminata's motion for relief from judgment, Assistant Attorney General Lauryl Scott discovered two developed photographs and a number of undeveloped photographs of the fire scene. The next day, Scott met with Marquardt and Rood,

and Rood revealed for the first time that he thought Jenkinson's board reconstruction was incorrect and that Rood might have taken more photographs than were in the case file. Rood testified during his deposition that he believes that about two rolls of film that he took during his inspection were not produced to the defense.

After the district court denied Scott's request for an adjournment to allow time for Marquardt to analyze the newly found photographs, Scott stipulated that Caminata's motion for relief from judgment be granted.[2]

On February 28, 2014, Caminata brought this action under 42 U.S.C. § 1983 alleging Fourth and Fourteenth Amendment violations against Jenkinson, Rood, Trent Taylor, the officer in charge of Caminata's case, and the County of Wexford.[3] The district court granted Jenkinson's motion for summary judgment, concluding that his actions were at most negligent, and thus protected by qualified immunity. The court denied the summary judgment motions of Rood, Taylor, and the County of Wexford, and they subsequently entered into settlement agreements with Caminata.

## II. Analysis

Caminata argues that Jenkinson is not entitled to qualified immunity for his alleged violations of the Fourth and Fourteenth Amendments. Caminata alleges that Jenkinson deliberately fabricated the evidence at the fire scene in order to rule out the possibility of a chimney fire. Specifically, Caminata asserts that Jenkinson's board reconstruction and

---

[2] Marquardt testified that although he concluded that the new photographs enhanced Jenkinson's testimony, he had also seen Jenkinson testify poorly in a different case. Scott was troubled by Marquardt's "waffling" about whether to retry the case and decided to dismiss the charges against Caminata. R. 66-5, PID 1525.

[3] Caminata also brought a claim against Chad Sprik, but the parties stipulated to dismiss Sprik with prejudice.

conclusions as to the failed attempts at ignition were incorrect. Caminata further argues that Jenkinson knowingly withheld his fabrications from the prosecution.

## A. Standard of Review

We review a district court's grant of summary judgment de novo. *Dixon v. Univ. of Toledo*, 702 F.3d 269, 273 (6th Cir. 2012). "Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015). "We review the evidence and draw all inferences in the light most favorable to the nonmoving party." *Dixon*, 702 F.3d at 273. The question is whether the facts, when construed most favorably to Caminata, show that Jenkinson violated Caminata's clearly established constitutional rights.

## B. Qualified Immunity

Qualified immunity shields a government official from liability unless his conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). To determine whether qualified immunity applies, the court must decide whether Jenkinson's actions violated Caminata's constitutional rights, and whether the rights at issue were clearly established at the time of the violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The court may address either prong of the analysis first. *See id* at 236.

**C. Caminata's Fourth Amendment Claims**

Caminata alleges two Fourth Amendment claims against Jenkinson: fabrication of evidence and malicious prosecution. Since our determination whether a reasonable jury could find that Jenkinson intentionally manipulated the scene of the fire or acted with a reckless disregard for the truth is a necessary element of both claims, we consider the claims together.

"A Fourth Amendment claim for fabrication of evidence lies where a defendant knowingly manufactures probable cause, thereby effecting a seizure." *Robertson v. Lucas*, 753 F.3d 606, 616 n.5 (6th Cir. 2014); *see also Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) ("It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury.").

"To succeed on a Fourth Amendment malicious prosecution claim . . . a plaintiff must prove the following: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor." *Robertson*, 753 F.3d at 616. Although actual "malice" is not required to succeed on a malicious prosecution claim, a defendant must have made "deliberate or reckless falsehoods," and "mere negligence" will not create liability. *Johnson v. Moseley*, 790 F.3d 649, 655 (6th Cir. 2015).

Caminata relies heavily on *Gregory*, a case involving a forensic examiner's inaccurate report regarding the number of hairs she recovered from the scene of a rape. Although the examiner testified that she had "found five hairs," and that these hairs matched the plaintiff's

hair, a later deposition revealed that the examiner had actually recovered seven hairs, two of which were non-matching. *Gregory*, 444 F.3d at 732, 734. Furthermore, the plaintiff alleged that none of the hairs were in fact a match, and the plaintiff's expert testified that the examiner's findings were "far afield of what any reasonable forensic examiner would find from the evidence[.]" *Id*. at 744. This court concluded that summary judgment was inappropriate, finding that a reasonable jury could conclude that the examiner "deliberately withheld the existence of those two nonmatching hairs" and "fabricated her report." *Id*.

This case, however, is distinguishable from *Gregory*. There, the allegedly false forensic report and testimony did not arise from a flawed investigation; rather, the examiner admitted knowing there were seven hairs, yet chose to report only five. Moreover, the parties disagreed as to what the hair evidence showed, creating a disputed issue of material fact that was inappropriate for resolution in an interlocutory appeal. *Id.* at 744–745. Here, although Jenkinson's investigation and conclusions may have been flawed, there is no evidence to suggest that his report contained deliberate omissions or reckless falsehoods.

While Caminata has cast doubt upon the soundness of Jenkinson's conclusions, he has failed to show that Jenkinson acted intentionally or recklessly in his investigation. Caminata's primary evidence supporting his claims is expert testimony characterizing aspects of Jenkinson's investigation as "huge mistakes" that would not be expected of someone with his level of experience. R. 99-2, PID 2421–23. Indeed, when presented with photographs Raad took of the areas that Jenkinson opined had been burned with a "heavy, direct flame source," Jenkinson acknowledged that his conclusions appear to have been incorrect. R. 88-1, PID 2282–83. Although this testimony impugns the quality of Jenkinson's investigation, it is insufficient to establish knowing fabrication or deliberate or reckless falsehoods, rather than mere negligence.

Jenkinson spent multiple hours at the site, produced an eight-page report of his findings, and took 115 photographs. At the scene, Jenkinson spoke with Fire Chief Mizga who stated that he was skeptical of Caminata's report that the fire originated as a small chimney fire. Jenkinson analyzed the state of the wood in the stove, and his conclusions supported the fire chief's doubts. During his follow-up investigation, Jenkinson took an additional twenty photographs and wrote a brief supplemental report. By this point, he had considered and eliminated other potential causes of the fire, such as natural and electrical causes. Although evidence suggests Jenkinson's board reconstruction was deficient and unreliable due to his failure to excavate an estimated fourteen inches of rubble from the area, there is no evidence that this error was intentional, and the board reconstruction was not the sole basis for Jenkinson's conclusion.

Moreover, the testimony in this case supports Jenkinson's position that he did not deliberately fabricate evidence, and Caminata offered no testimony or affirmative evidence to the contrary. Jenkinson testified that he did excavate the area and believed he had reached the floor, as required for an accurate board reconstruction. Further, ATFE agent Marquardt, upon reviewing the entirety of the investigation, opined that "[Jenkinson's] systematic actions at the fire scene, thorough documentation, written reports, and sworn testimony clearly demonstrate an adherence to the elements of [the scientific method]." R. 66-6, PID 1572. Finally, Plaintiff's expert witness acknowledged that fire investigators viewing the same body of evidence sometimes reach different conclusions, and that he found no evidence that Jenkinson removed evidence from the scene, planted evidence at the scene, or fabricated evidence.

Through the photographs, reports, and deposition testimony, the record supports that Jenkinson attempted to thoroughly investigate the fire scene. Whether he succeeded is immaterial in establishing a Fourth Amendment violation. Viewed in the light most favorable to

Caminata, the record at best reveals that Jenkinson negligently investigated the fire, and such a conclusion does not establish a constitutional violation. *See Ahlers v. Schebil*, 188 F.3d 365, 373–74 (6th Cir. 1999) ("At best, however, the investigation's lack of thoroughness might support an inference of negligence, but it does not demonstrate knowing or intentional behavior designed to violate [plaintiff's] constitutional rights."); *see also Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001) ("The facts in this case supported at most a finding of incompetent or negligent investigation, which is insufficient to establish a constitutional violation."). Jenkinson is thus entitled to qualified immunity on Caminata's Fourth Amendment claims of fabrication of evidence and malicious prosecution.

### D. Caminata's Fourteenth Amendment Claim

Caminata additionally alleges that Jenkinson violated his Fourteenth Amendment rights by withholding exculpatory evidence. Just as prosecutors must disclose material evidence to criminal defendants, *see Brady v. Maryland*, 373 U.S. 83 (1963), police officers are obligated to turn over potentially exculpatory evidence to the prosecutor's office. *See Moldowan v. City of Warren*, 578 F.3d 351, 378–79 (6th Cir. 2009). However, a police officer need only disclose evidence "when its exculpatory value is 'apparent' to the officer, that is, when the officer is aware that the evidence 'could form a basis for exonerating the defendant.'" *D'Ambrosio v. Marino*, 747 F.3d 378, 389–90 (6th Cir. 2014) (internal citations omitted) (quoting *Moldowan*, 578 F.3d at 384, 388 n.14). Having concluded that Caminata failed to show that Jenkinson knowingly fabricated his reports, the *Brady* claim turns on whether, after conducting his investigation, Jenkinson knew that his reports were false and subsequently withheld this information from the prosecutor. Otherwise, the exculpatory value of the information would not have been apparent to Jenkinson.

Caminata asserts that evidence supporting that Jenkinson knowingly withheld exculpatory evidence from the prosecutor can be found in two statements made in depositions. Jenkinson testified that he is "sure that [his conclusion ruling out a thimble hole fire] was discussed [with Rood or Taylor]," R. 65-7, PID 838, and that he could not remember when the conversation happened or its details, but that his conclusion "was probably talked about." R. 65-7, PID 838. Caminata pairs this testimony with a statement from Rood that had Jenkinson asked for Rood's opinion of the board reconstruction, Rood would have informed Jenkinson that he believed that Jenkinson had conducted it incorrectly. Caminata asserts that because Jenkinson testified that he spoke briefly with Rood and Taylor during his follow-up investigation on March 18, a reasonable jury could find that Rood told Jenkinson that he believed his board reconstruction was flawed, and that Jenkinson therefore became aware of exculpatory information that he later withheld from the prosecutor.

Caminata's argument, however, ignores Rood's unequivocal testimony that he did not inform Jenkinson, or anyone else, of his findings. Rood repeatedly stated that he did not tell Jenkinson that he believed his board reconstruction was incorrect and, indeed, that he did not tell *anyone* of the error until he informed Agent Marquardt in July, 2013, because "[h]e's the only one who asked." R. 75-1, PID 2141. Moreover, Jenkinson testified that it would have "stuck out in [his] mind" had Rood informed him that he believed his board reconstruction was incorrect. R. 65-7, PID 839. Thus, while Caminata has, through Jenkinson's testimony that his conclusion was "probably talked about," established a likelihood that Jenkinson informed Rood and Taylor of his findings, there is no evidence suggesting that Rood told Jenkinson of the deficiencies he perceived in Jenkinson's investigation. Thus, there is no basis to find that Jenkinson withheld

evidence, the exculpatory value of which was apparent to him, and the district court appropriately granted summary judgment on this ground.

Because we affirm the grant of summary judgment on the basis that Caminata has not provided facts supporting that Jenkinson violated his constitutional rights, we need not reach the question whether those rights were clearly established at the time of the investigation.

### III. Conclusion

For these reasons, we **AFFIRM** the district court's grant of summary judgment to Jenkinson.